Statement of the Case.
NICHOLLS, C. J.
Defendant, a street railway corporation, appeals from a judgment against it in favor of the plaintiff for $3,500, as damages for injuries received for which she charged it to be responsible. The judgment was based upon the verdict of a jury. She alleged that on defendant’s right of way in Parkview, at the intersection of Laurel street and Park avenue with right of way, it had erected a covered platform, called the “West Shreveport Station,” for the accommodation of passengers who desired to ride on their cars, and all cars stopped at said depot to take on and discharge passengers; that on the night of November 10, 1901, there was no light at said station, and she was on said platform, awaiting a car of the company; that when she was about to step on the car the floor of said station contained a plank adjacent to the rail, some. 11 inches from the same, which was rotten, and the same gave way, and her foot and left leg passed through the plank, wrenching her leg and bruising the same; that the injuries produced disease of the bone, from which she had suffered intense pain, and had disabled her from her daily duties, and *402 confined her to her bed for nearly three months,' and she was still unable to walk without crutches; that she was an invalid, and unable to endure the use of remedies to alleviate the pain, and that her injuries were permanent; that she was without fault, and the injuries received were due solely to the gross carelessness of the defendant. She set up different items of specific damages, and also a claim for §4,500 for the pain and suffering occasioned her by the injuries.
Defendant pleaded the general issue, and averred that, if plaintiff was hurt as alleged, it was due to her own carelessness and negligence, and not to that of the company; that she was guilty of contributory negligence and could not recover.
Opinion.
In the brief filed on defendant’s behalf it is urged that the platform through which plaintiff fell and injured herself was built in a street by parties not interested in defendant company or its operations, and hence defendant was not liable for injuries received; that the defect in the plank through which the plaintiff fell was latent, and not discoverable by ordinary and proper inspection; and that, if defendant was liable at all, the damage awarded was excessive. Defendant says: “The evidence is that real estate agents at the city of Shreveport, who are interested in the sale of suburban property, erected on the street near defendant’s road a pavilion for the accommodation of persons visiting the property offered for sale, and also erected a platform adjacent thereto, and alongside the • track of defendant company, and which was constructed in the middle of the street. This platform was flush with the rails, and about one foot above the ground covered by it. The defendant company does not controvert the principle of law, announced in numerous decisions of this court, that a railroad company is required to keep the stations and platforms used by passengers in getting on and off its cars in good condition, and is responsible for damages for neglect to keep them in proper condition, but holds this is not a ease for the application of the legal principle involved in these suits. The defendant company had nothing whatever to do with placing the platform in the street, and, indeed, had no control whatever over it. And it is not disputed that the president of the defendant company requested the persons who had placed it there to remove it. It is true that cars stopped on that side of the street, when moving in the direction where the platform fell, on the far side of the street, as required to do, and customary in all streets. To have avoided stopping at this place would have, necessitated stopping across the street, or moving the ear a distance beyond the platform. We know of no authority for holding a railroad company responsible for constructions of third persons in the streets of a city, and for injuries sustained in consequence thereof. In any event, the railroad company cannot be held responsible for the injuries sustained in this case, because it is in evidence that the defect in the plank was latent, and was not and co aid n,ot be discovered by proper inspection. The witness Mosely says it would have been necessary to have torn up the plank to have ascertained that it was rotten. And no one seems to have discovered the weakness of the plank until it was broken; and, moreover, he states positively that the outer surface of the plank seemed to be good. True, he says that defendants might have discovered it with a timber rod, but surely it is not required of a company who did not erect the platform, and which is not situated on the company’s property, but on one of the streets of the city, to • make inspection of such platform, and each plank thereon, with a timber rod. After the plank broke, and the superintendent of the defendant company learned of the accident; he had a plank put over the hole, in order to avoid the possibility of other accidents until the platform could be removed. The authorities are abundant that an injured party cannot recover for defects in material and appliances, platforms, etc., where not readily discoverable by ordinary inspection.”
The statement made by defendant as to the parties who built the platform, and the circumstances under which it was constructed, is sustained by the evidence. The object in view having been apparently attained, the structure itself has been permitted to remain where it was placed without interference from any quarter: the sign, “West End Station,” upon it, indicating the *404 actual use to which it has been applied for many years. The parties who placed the “station” where it is have disappeared from view, leaving, so far as the record shows, the railway company in full possession, undisturbed, of the same, if not as owners, certainly as licensees. Defendant says that the structure was really an inconvenience to it, but, if so, it took no legal step to abate it (Rev. Oiv. Code, art. 861); on the contrary, actually utilized it. Defendant claims that it had no control over the building. As a proposition, it might be true, were there an issue between it and the parties owning it, but it is not true as an actual fact, for the evidence discloses that the morning after the accident the broken plank was replaced by its workmen, acting under orders of its superintendent, and that the superintendent found fault with one of them for not having sooner obeyed his orders (given prior to the accident) to repair it. In Fetter’s Carriers ■of Passengers, c. 3, § 52, the author says:
' “The ownership by third persons of any portion of the station grounds or approaches used by a common carrier in receiving and discharging passengers will not affect his liability as such. The duty of a carrier to exercise a proper degree of care to keep approaches to its station grounds in repair is not affected by the fact that it has constructed such approaches over land not owned by it, but forming part of a highway. A steamboat company which lands its passengers on a wharf not owned by it makes such a wharf a part of its own means of landing, and is liable to its passengers, the same as if it owned the premises. A carrier by sea, who employs a hulk owned by people for the purpose of embarking passengers on his steamer, is liable for injuries sustained by a passenger by reason of a hatchway on the hulk being negligently left unguarded, though the hulk is under the control of the owners, and not of the carrier, since it is a part of the means of transportation, and it is part of the carrier’s duty to use reasonable care for its safety. A railroad company is liable for injuries to a passenger sustained by reason of a defect in a platform leading from the train to an eating house, though the platform was constructed by hotel people, and had not been used by the railroad company for some time, where it was located on the company’s right of way.”
The author cites John v. Bacon, L. R. 5 O. P. 437, and other authorities, in support of this position — one of them to the effect that, where the platform at a station being too high to be conveniently reached, some one had provided a plank leading up to the platform, which had been used since the depot was built, the company was held to be as much liable for injuries arising from the defects in the plank as if it had set up and maintained the dangerous way (Collins v. Railway Co., 80 Mich. 390, 45 N. W. 178); another to the effect that a railroad company was bound to exercise due care in keeping in repair a bridge over a gully on its station grounds used by passengers on leaving the grounds, though the bridge had been constructed by strangers to the company (Chance v. Railway Co., 10 Mo. App. 351).
Even if the defendant in this case had been under no direct obligation to repair the bridge or platform, it would have been its duty to avoid stopping its coach directly opposite to it for the purpose of taking on and putting off passengers. It was its duty to have kept advised of the condition of the bridge and platform, and not invited its customers to embark or alight at a dangerous place. There was no legal obligation on its part to have stopped the car precisely at that spot. It could and should have moved its coach further, if that place was not safe, even though the passengers might be subjected to some inconvenience. Rather this than to place them in danger.
It has been repeatedly held that parties alighting from or embarking upon a train are authorized to act upon the assumption that the officers of the company have taken proper precautions to insure their safety. Defendant says that it was not- apparent that the plank was defective, and it was not called upon to know the fact. Within certain limits, a railroad company is not held to be liable for latent defects, but we do not think defendant in this case falls under the operation of the rule it invokes. The plank was unquestionably defective, for the lady who, stepping ■ upon it, broke it, weighed only 108 pounds. We think the company was aware of its condition, but, even if, as a fact, it was not, it was its duty to have *406 known it. A railroad company is bound to know of tbe effect of time and weather upon its appliances, and it should, by proper inspection and timely changes, keep them safe. Williams v. Electric Company, 43 La. Ann. 300, 8 South. 938. If, in consequence of a defect in its appliances, an accident occurs to one of its passengers, it should affirmatively show some state of facts tending to exonerate it. Patton v. Pickles, 50 La. Ann. 865, 24 South. 290; Kennon v. V. S..& P. R. R., 51 La. Ann. 1599, 26 South. 466; Aiken v. South. Pac. Co., 104 La. 162, 29 South. 1. Defendant has in this case made no attempt at all in that direction. Its position is that it was under no obligation at all or responsibility in the premises, and it is not supported by the law in that position.
We are of the opinion that the judgment of the district court in favor of the plaintiff against the defendant is correct, but that the amount of damages awarded is too large. It should in that respect be amended.
For the reasons herein assigned, it is hereby ordered, adjudged, and decreed that the judgment appealed from be, and it is hereby, amended by reducing the amount of damages awarded from $3,500 to $2,500, and, except as so amended, the judgment appealed from is hereby affirmed; costs of appeal to be paid by the appellee.