(110 So. 202)

No. 25984.

## GRAU v. CONSOLIDATED DREDGING & MFG. CO.

(Oct. 5, 1926.  Rehearing Denied Nov. 2, 1926.)

*(Syllabus by Editorial Staff.)*

1. Appeal and error ☜1002, 1011(1).

Burden on appellant to show that judgment complained of is erroneous is not discharged in case involving only question of fact by pointing out that evidence is conflicting and that trial judge or jury might have reached different conclusion.

2. Execution ☜171(1).

Where plaintiff suing on note was not holder in due course before maturity, sheriff should be enjoined from proceeding in executory process.

Appeal from Civil District Court, Parish of Orleans; Percy Saint, Judge.

Suit by Adolph E. Grau against the Consolidated Dredging & Manufacturing Company on a note and to foreclose a mortgage. From a judgment granting an injunction restraining a sheriff from proceeding further in an executory process, plaintiff in injunction appeals. Affirmed.

Daniel Wendling, of New Orleans, for appellant.

Miller, Miller & Fletchinger, of New Orleans, for appellee.

ST. PAUL, J. [1] In Hanton v. N. O. & C. Ry. L. P. Co., 124 La. 562, 50 So. 544, this court said (page 583 [50 So. 552]):

"The burden rests on an appellant to show, to the satisfaction of this court, that the judgment of which he complains is erroneous."

And that burden is not discharged, in a case involving only a question of fact, by the appellant merely pointing out that the evidence is conflicting and that the trial judge or the jury might, on such conflicting evidence, have reached a different conclusion. Winn v. Strickland, 151 La. 235, 91 So. 719; Wall v. Dudley, 152 La. 911, 94 So. 441.

The case at bar involves only a question of fact, the evidence is long and conflicting, and we see no reason for disturbing the finding, of the district judge, who heard and saw the witnesses and disposed of the case as follows:

"Opinion of District Judge.

"This suit comes up on a petition for an injunction restraining the sheriff from proceeding further in an executory process.

"The facts are substantially as follows:

"The Consolidated Dredging & Manufacturing Company, Inc., was organized in June, 1922,

by William H. Onion, R. Sidney Hernandez, and Arthur P. Boh. Mr. Onion was the expert and experienced member of the corporation, having had many years' experience in the dredging business.

"Mr. Onion represented to Hernandez and Boh that the dredging business was very profitable; and that he had a dredging outfit with all the appliances necessary; that the dredge boat he was selling needed some small repairs; and that after these repairs were made the outfit would be worth considerably more than it would cost them; that he would sell the whole outfit to the corporation which they were organizing for the sum of $10,000, placing the value of the dredge boat at $7,000.

"Onion further transferred to them (the corporation) a coal hoist, with everything belonging thereto except the engine, and also several other small engines and other parts necessary in the dredging business.

"The sale was made by Onion to the corporation for the sum of $10,000, of which $2,500 was paid in cash, and the company executed its note for $2,500, being the balance due for the half interest to be owned by his associates Hernandez and Boh [Onion taking $5,000 in stock of the corporation as the balance of the purchase price; and his two associates taking a like amount of stock, for which they paid $2,500 in cash and furnished their personal notes for the balance].

"Adolph E. Grau, the plaintiff in the foreclosure suit [and defendant in injunction] appears in the present suit by reason of the fact that he is foreclosing on the note of $2,500 above referred to, alleging that he secured the note in due course; and the other two members of the corporation, Hernandez and Boh, have enjoined.

"They contend that Onion, being their associate in the corporation, and being its president, owed to the other members more than ordinary frankness and honesty and care in his transaction with them, but that he had misrepresented the value of the outfit sold to the corporation, and that his misrepresentations constituted fraud and bad faith on his part.

"There is a mass of testimony in the record from both sides on the value of the outfit sold by Onion. It seems that Onion himself had paid a few days before, or possibly a few days after, the organization of the company, only $2,500 [$2,250] for the dredge, which he sold to the company for $7,000; and it is upon this particular fact that plaintiffs in injunction base their contention of fraud, misrepresentation, and bad faith.

"Onion also transferred to the corporation a certain coal hoist frame, which afterwards developed not to be as valuable as Onion had represented it to be, and furthermore, that Onion owed over one year's ground rental for the hoist at $12.50 per month. It also appears that Onion never has made delivery of any part of the things sold by him to the corporation. All of which plaintiffs in injunction contend is misrepresentation and fraud.

"Their other contention is that Grau, in whose name the foreclosure proceedings (against the dredging outfit aforesaid) is not a bona fide holder of the note sued upon, he not having acquired it in due course. In fact the testimony shows that Grau began to pay for the note before it was in existence, and that the note was not delivered to him, or the last payment made, until the day after its maturity; that he is the son-in-law of Onion, and lives in Onion's home; that large payments were made Onion in cash instead of by check—which circumstances go to show that Grau was not in good faith and knew that Onion was transferring the note to him for the purpose of escaping any equities that might attach to Onion in the event that Onion himself should foreclose on the note.

"I have studied this case very carefully and given full consideration, and, while I find a great difference of opinion between the witnesses on both sides as to the value of the dredging outfit, I have concluded that the preponderance of the testimony is in favor of the plaintiffs in injunction in their contention that Onion had misrepresented the value of the property.

"The record shows that after Boh and Hernandez had discovered that the property was not as valuable as had been represented by Onion, they then offered to return the dredge to Onion, if he would surrender the $2,500 note and give them a mortgage thereon for $2,500 in return for the $2,500 cash advanced by them; all of which he refused to accept. This is a very strong circumstance, in my opinion, in favor of the contention of plaintiffs that if Onion thought the dredge was of such great value, he could have gotten the return of it by merely returning the $2,500 in cash which had been advanced by Boh and Hernandez; and it is reasonable to suppose that he would have accepted the proposition had he thought the property worth anywhere near the value represented by him. Furthermore, Boh and Hernandez had sustained a loss of $1,800 in operating expenses, and they offered to carry this loss themselves if Onion would let them out and would surrender the note which is in controversy in this case.

"While I do not think there was any particularly fraudulent design on the part of Onion, I am unable to escape the conclusion that Onion was not acting with that frankness and fidelity which is due by one business associate to an-

other, and that Boh and Hernandez would never have gone into this deal but for the misrepresentations made to them by Onion.

[2] "Now, as to the injunction restraining the execution or foreclosure on the note, I do not think that Grau is a holder in due course before maturity; in fact, as has been stated, Grau secured this note after its maturity and paid the last $500 on the note after its maturity and after having advanced money on it prior to its actual execution. I cannot escape the conclusion that Mr. Onion and his son-in-law, Grau, are not in good faith in this transaction, and I think that the injunction should be maintained and perpetuated.

"For the reasons assigned, there should be judgment in favor of plaintiffs in injunction as prayed for; and it is so ordered."

### Decree.

The judgment appealed from is therefore affirmed.