BAPTISTE v. N. O. PUB. SERVICE, INC.

___

(April 7, 1930.   Opinion and Decree.)
(May 17, 1930.   Rehearing Refused.)
(July 2, 1930.   Writ of Certiorari and Review Refused by Supreme Court.)

___

Richard A. Dowling, Wm. R. Kinsella, of New Orleans, attorneys for plaintiff, appellee.

Ivy G. Kittredge, of New Orleans, attorney for defendant, appellant.

HIGGINS, J. Plaintiff sues defendant as a carrier of passengers for the sum of $9,-200 for personal injuries alleged to have been sustained about 4 o'clock p. m. April 1, 1929, while attempting to alight from the rear platform and step of the street car upon which she was riding as a passenger, at the corner of Freret street and Napoleon avenue, this city. The petition alleges that the step and doors of the car leading from the rear platform are operated by a mechanism which causes the doors to open and close and the step to be drawn against the side of the car in a vertical position when not being used and to be lowered and placed in a horizontal position at right angles with the side of the car when the doors are open and the step is in position to be used; that as the car stopped, the doors were opened and the step lowered by the conductor, who operated the mechanism with a lever, and that plaintiff was thereby invited to descend; that, as she stepped from the rear platform on the step, she did not notice that the step was not completely down in its correct position, and, as she stepped upon it, it gave way under her weight for a distance of about three inches, thereby causing her to lose her balance and fall violently to the ground; and that, as a result of the fall, she suffered certain alleged injuries.

Defendant entered a general denial and averred that, after the plaintiff safely alighted from the car, she stumbled and fell while walking from the car, breaking the force of her fall by landing partly on a bundle of clothing on the ground near her; that the car had fully stopped; that the step was placed in the proper position and was fully down and was in a good state of repair; that the agents and employees of the defendant exercised all possible care, prudence, and caution on the occasion, and that the plaintiff is solely at fault and responsible for her injuries through her own negligence and imprudence in failing to exercise that degree of care and caution necessary under the circumstances.

The case was tried before the district court, who rendered judgment in favor of plaintiff for the sum of $2,000, and defendant has appealed.

As this is a suit against a public carrier of passengers for alleged personal injuries sustained by a passenger, when the plaintiff proved that she was such a passenger on the street car, and that she fell from the step of the car while alighting, the burden of proving itself free from fault was then upon the defendant. LeBlanc vs. Sweet et al., 107 La. 355, 31 So. 766, 90 Am. St. Rep. 303; Hopkins vs. N. O. Ry. & Light Co., 150 La. 61, 90 So. 512, 19 A. L. R. 1362; Rizzo vs. N. O. Ry. & Light Co., 7 La. App. 686; Cusimano vs. N. O. Public Service, (La. Sup.) 127 So. 376.

The record shows that plaintiff was a passenger upon a Napoleon avenue street car, owned and operated by the defendant, and that the car stopped at the corner of Napoleon avenue and Freret street for the purpose of discharging and receiving passengers at the usual paved landing place. As the car stopped, the conductor pulled the lever which caused the doors of the car to open and the step to go down, in order that passengers might descend and board the car. Andrew Dallas, a colored boy, who

was a passenger on the car, threw a large bundle of laundry wrapped in a sheet from the rear platform of the car to the pavement. The plaintiff then stepped from the rear platform on to the step, which had not gone all the way down to a horizontal position, where it properly should have gone, and, as she placed her right foot upon it, the step gave way, or went down under her weight, causing her to fall from the step to the ground, striking her left knee on the step and her right knee and shoulder on the pavement, with her arms on the laundry bundle. The conductor picked her up and she showed him the injuries to her knees. Plaintiff is a colored woman, age 57 years, and is a trained nurse. She is very tall and thin. She was able to walk, but was assisted home by a friend.

This case involves only issues of fact, of which there are two: First. Whether or not the plaintiff safely alighted from the car and then tripped or stumbled over the bundle of clothes. Second. Did the plaintiff fall from the step of the car due to the fact that the step was not in proper position (that is, at right angles with the side of the car) but was in a vertical position, or on an oblique angle with the side of the car. We shall discuss the evidence with reference to these two questions in the above order.

It is first noted that the answer of the defendant does not say that the plaintiff stumbled over the bundle of clothing, but merely that the force of the fall was broken by falling on the bundle of clothing on the ground near her. Defendant's witnesses contradict each other as to where the bundle was, some saying it was within two or three feet of the car and others within five or six feet of the car. One of defendant's witnesses, Andrew Dallas, the colored boy, age 12, who threw the bundle from the car, testified that the plaintiff fell from the step of the car. The motorman, Louis Monicou, testified that the conductor, John E. Unland, told him that the plaintiff said at the time of the accident that she fell from the step. The motorman also testified that F. M. Kroh, another witness for the defendant, told him at the time of the accident that the plaintiff claimed she fell from the step and would make a claim against the company, but that he (Kroh) saw her when she fell over the bundle and gave his name and address to the motorman as a witness. In spite of this testimony the defendant offered as a witness George T. Croman, one of its investigators, who testified that he interviewed the plaintiff at her home the morning after the accident, and that she said she fell after she alighted. All of the plaintiff's witnesses, including herself, testified that she fell from the step of the car, and that her arms came in contact with the bundle after she fell to the ground. The preponderance of the evidence clearly shows that the plaintiff fell from the step of the car and not over the bundle, after safely alighting.

We next pass to a consideration of the question as to what caused the plaintiff to fall from the step of the car. The plaintiff and her three witnesses testify that she fell from the step of the car, and plaintiff and one of her witnesses, Andrew Burras, colored, testified that the step was not properly down and gave way under her weight as she stepped upon it, causing her to fall. The motorman and conductor both testified that they did not see plaintiff when she fell, but that they had no complaints from any other passengers before or after the accident that the step was not in good working order. F. A. Geiser, repair foreman for the defendant,

testified that the mechanism that operated the doors and the step is operated by air pressure, and that, when the doors were wide open, the step had to be fully down in position to be used. He stated that this car had been in use since March, 1925, and, as far as he knew, there had never been any repairs to take up the slack or lost motion which would be caused by the wearing of the parts which were used in the mechanism that opened and closed the doors and step. On cross-examination he admitted that in opening and closing the doors and steps there would be wear on the pins that would cause some lost motion, maybe one-eighth or a quarter of an inch. In short, the plaintiff has positive testimony that the step was not in proper position and did give way some two or three inches under her weight when she stepped upon it, and the evidence of the defendant as to the step being in proper position is negative. We, therefore, find that plaintiff fell from the step of the car as a result of its being tilted, or in an improper position, and that the defendant was guilty of negligence and carelessness in inviting a passenger to descend upon a step which gave way and would not properly support her weight and cause her, a passenger, to fall. Even if we were not of the opinion that the evidence preponderates in favor of plaintiff, and that defendant has failed to show that it was free from fault, nevertheless, the case would clearly fall within the category of the decisions which hold that, on questions of fact, unless manifestly erroneous, the conclusions of the trial judge should be upheld. Hanton vs. N. O. & C. R. L. & P. Co., 124 La. 562, 50 So. 544; Winn vs. Strickland, 151 La. 235, 91 So. 719; Wall vs. Dudley, 152 La. 911, 94 So. 441; Grau vs. Consolidated Dredging & Mfg. Co., 162 La. 205, 110 So. 202; Tinker vs. Hirst, 162 La. 209, 110 So. 324; Ponder vs. Coyle, 164 La. 905, 114 So. 729.

As to the quantum, the only medical testimony we have in the record is that of Dr. R. J. Coker, who testified that he treated the plaintiff on April 2d, and 3d, and that he found blood in her urine, contusions of the right shoulder blade and of the right and left knee, and a dislocation of the right kneecap; that he treated her while she was in bed for three weeks; that X-ray pictures were made of the knee and shoulder, but he would not undertake to say what they showed, as he was not at liberty to withdraw them from the Charity Hospital, where they were made; that he then lost sight of the case for about six or eight weeks; that he reported the result of his finding to Dr. Thibaut, the defendant company's doctor; that the right knee was stiff in spite of the fact that ultra violet ray treatments were administered, and that there was a 30 per cent disability of the right knee at the time of the trial. This medical testimony is corroborated by the plaintiff's testimony, who volunteered to have the court to appoint a doctor to examine her, but this was not done. The plaintiff is a colored woman, age 57 years, and a trained nurse. The judge of the trial court allowed her the sum of $2,000. We are of the opinion that this amount is somewhat excessive, in view of our jurisprudence in similar cases, and will reduce it to the sum of $1,250.

For the reasons assigned the judgment is amended by reducing the amount awarded plaintiff to $1,250, and, as thus amended, it is affirmed, appellant to pay all costs.

JANVIER, J. (dissenting). I would hesitate to dissent in a case in which I differed from my associates only on a question of fact, particularly where they, in the majority opinion, have, in their findings of fact, concurred with the district judge.

Here, however, not only do I disagree with the conclusions of my brothers on the facts, but I am unable to persuade myself that, even conceding the facts to be as they have found them, there is liability in defendant.

Pretermitting for the moment a discussion of the evidence on the facts and conceding, arguendo, that they are as my associates have found them, what is the legal situation presented? Simply this: That a carrier is held liable, not because of any negligence on its part, but solely because of a latent, undiscoverable defect.

It should be borne in mind that there is no charge made that any employee of defendant was negligent in the operation of the car, or in the manipulation of the folding step. The sole charge of negligence is that the step failed to operate properly, because it was defective.

The record shows, and there is no assertion to the contrary, that, prior to the accident, the car had been subjected to the usual inspections, and that it had operated without mishap of any kind.

This, of course, would not be sufficient to relieve the carrier of liability, but the proof is that, after the accident, the car and the step and the mechanism thereof were carefully and rigidly inspected, and that no defect manifested itself, and that the car remained in service without repairs or adjustments, and that thousands of passengers boarded and disembarked by means of the same steps, without its having been changed or repaired in any way. If, then, it was a defect which caused the accident, that defect had not been discovered by examination before or after, and it did not manifest itself again. In other words, assuming that there was a defect—and this is a very violent assumption—it was one which the most careful examination and inspection could not disclose.

It is true that upon the carrier rests the burden of proving that there was no negligence on its part or on the part of its employees. Since it is conceded that there was no negligence in the operation and manipulation of the car, all that the carrier need do is prove that the car and its equipment were not defective, or that if they were defective, the defect was latent and could not have been discovered by the most careful inspection.

That a carrier is not an insurer of the safety of its passengers has many times been held, and, in the latest decision of our Supreme Court on the subject (Cusimano vs. N. O. Public Service, Inc. (La. Sup.) 127 So. 376, decided March 5, 1930), that court held that all a carrier need do is disprove its own negligence, and that it need not go further and prove affirmatively what negligence or whose negligence caused the injury.

In Corpus Juris, vol. 10, pp. 863, 864, the rule that a carrier of passengers is not an insurer of their safety is stated as follows:

"A carrier of passengers is not as absolutely liable for the safety of the passengers as a carrier of goods is for the safety of the goods but it is only liable for injuries to passengers which are caused by its negligence in failing to exercise the proper degree of care, skill, and diligence for such passengers' safety, and therefore is not an insurer of the safety of passengers, in the sense in which a carrier of goods is said to be an insurer of the safety of the goods; and hence is not liable for injuries caused by an accident which an exercise of the proper degree of care, skill, and diligence could not anticipate or prevent."

That even a defect in equipment will not render a carrier liable, if the defect could

not have been discovered, is as well settled. The leading Louisiana authority on this point is Frelsen et ux. vs. Southern Pacific Co., 42 La. Ann. 673, 7 So. 800, in which a passenger was injured on a train as the result of the breaking of a wheel of the car; the court held that the wheel had broken as the result of a latent undiscoverable defect and that, hence, the carrier was not liable. In that case the company's defense, as stated by the Supreme Court, was:

"* * * That it did provide a safe conveyance, with proper equipments, as far as it could do so, with the exercise of the utmost care and skill, and that the accident was solely due to the latent defect in a wheel, which no human care or skill could have detected or prevented."

The court said:

"There can be no doubt that, as it is shown that the wheel was manufactured in a proper manner, by respectable manufacturers, and that, like it, the axle was without blemish; that as no defect was revealed after the usual examination and test on the night of the accident, and shortly before its occurrence,—no fault could be imputed to the defendant from which liability for the injury sustained could be attached."

In many other cases, both in this state and elsewhere, this rule is well recognized. I concede that to exonerate the carrier very strong positive proof that the defect could not have been discovered should be required, but, where the proof is without contradiction and shows that no defect was discovered before or since, and that the same mechanism remained in continual operation after the accident; this is conclusive evidence of the fact that the defect, if, in fact, there was one, was undiscoverable.

The same rule is well stated in Kight vs. Metropolitan R. Co., 21 App. D. C. 494, as follows:

"The test of care or skill required in the methods, and use and operation of machinery and appliances, is the ordinary usage and methods that obtain and are observed in the particular business, as practiced by the average prudent man, professing knowledge of the business; and railroad companies form no exception to this rule. If, having exercised such skill and prudence in the performance of its business, and in the course of such performance, unforeseen accidents occur, negligence or unskillfulness cannot be imputed to it."

Other leading Louisiana cases which recognize the existence of the rule—though, I confess, in each of them it was held that the proof of proper inspection was lacking—are Jackson vs. Natchez & Western Ry. Co., 114 La. 981, 38 So. 701, 70 L. R. A. 294, 108 Am. St. Rep. 366; Leveret vs. Shreveport Belt Ry. Co., 110 La. 399, 34 So. 579; Lowenthal vs. V., S. & P. Ry. Co., 117 La. 1007, 42 So. 483; Haynes vs. L. R. & N. Co., 140 La. 1019, 74 So. 538, 540; Aiken vs. Southern Pac. Co., 104 La. 157, 29 So. 1; Patton vs. Pickles, 50 La. Ann. 857, 24 So. 290; Julien vs. The Wade Hampton, 27 La. Ann. 377.

In Haynes vs. L. R. & N. Co., supra, the court said:

"Defendant undertook to show that the defect in the axle was a latent one, that the car had been properly inspected, and that it was impracticable to have discovered the defect. The defect was shown to have always been in the axle, and that the crack was an old one. It was not shown that the original defect could not have been discovered by the car builder, and it was his duty to have discovered it, if that were possible, and to have rejected it at the time of the building of the car. The crack in the axle should have been discovered by a proper inspection.

"In the case of Mary J. Morgan vs. Chesapeake & Ohio R. Co., 127 Ky. 433, 105 S. W. 961, 15 L. R. A. (N. S.) 790, 16 Ann. Cas. 608, it was held:

"'A railroad company is liable for injury

to a passenger caused by the breaking of an axle by reason of a sand hole, if the defect could have been discovered by the builder of the car by the exercise of the utmost human skill and foresight.'"

In Julien vs. The Wade Hampton, supra, is found the following:

"'Common carriers are bound to carry their passengers safely and securely, and to use the utmost care and skill in the performance of their duties.' Angell on Carriers, p. 568. 'And, of course, they are responsible for any, even the slightest, neglect.' 2 Greenleaf Ev. 221. 'The burden of proof is on the defendants to establish that there has been no disregard whatever of their duties, and that the damage has resulted from a cause which human care and foresight could not prevent.'"

I am, therefore, of the opinion that, even if it be conceded that the step was defective, that defect was undiscoverable, and that there cannot, therefore, be any liability in defendant for injuries caused by such defect, because to so hold would be, in effect, to hold a carrier to be an insurer of the safety of its passengers.

But I cannot agree with my associates and with the district judge in the finding that the step was defective, nor in the finding that the passenger fell from the step.

That no repairs were made after the accident, and that hundreds of persons have, without mishap, used it since, is not denied, and this, to my mind, is very conclusive evidence of its soundness and of the absence of defects. This fact, coupled with what I consider glaring inconsistencies in the testimony of most of plaintiff's witnesses, convinces me that on facts, as well as on the legal question involved, the judgment should be reversed. I see no reason to disbelieve the witness Kroh, who states positively that plaintiff had alighted from the car and had taken a step before she fell over the bundle. This witness is corroborated by Poche, who testifies that the plaintiff took a step forward and then tripped and fell over the bundle.

It is said that the witness Poche should not be believed because he had formerly been an employee of the company. It is true that he had once been in the employ of the company, but he testified very convincingly that he had tried to get back into the employ and had failed to do so. I see no reason why he should be prejudiced in favor of the company on this account. Rather would such facts create a contrary attitude.

The witness Mary Stevens, produced by plaintiff, proved out of her own mouth that she knew nothing whatever about the case and had not even been on the scene when the accident happened. She testified that she had gotten out of the car on Napoleon avenue going towards the river. That was the car from which plaintiff herself alighted, and yet this witness, Mary Stevens, says that the plaintiff had alighted from the car on Freret street going down town.

This error did not result from confusion on her part, because she repeated it many times and insisted upon it, and I am unable to believe her.

The witness Ben states that he was in an automobile going out Napoleon avenue, and that he saw the plaintiff fall from the step of the car; that his automobile had been stopped by a traffic signal, and that he was waiting for the signal to change from red to green. Two other automobiles were in front of him. I cannot believe that, under those circumstances, he was paying careful attention to plaintiff, since drivers of automobiles, when stopped, waiting for traffic lights to turn, almost invariably keep their attention focused on the lights, and since the two cars ahead of him certainly obstructed his view. Then, too, the testi-

mony that the traffic light had stopped the traffic which was proceeding on Napoleon avenue is directly contradicted by the witness Burres, produced by plaintiff, who states that he was going down Freret street and he was stopped by the traffic light, which was red. Surely it was not red in both directions at the same time.

But I know that no good purpose could be served by a long discussion of the facts. Suffice it to say that I believe that the plaintiff fell, not as the result of a defective step, but solely because, after alighting, she tripped on the bundle of clothes which had been thrown into her path by another passenger.

It is true that the defense that the defect, if any, was latent, was not raised in the pleadings, but the evidence which was introduced without objection shows facts which substantiate this defense.

For these reasons I respectfully dissent.