## WYLIE v. SHREVEPORT RYS. CO. *
### No. 4236.

Court of Appeal of Louisiana. Second Circuit.
April 5, 1932.

Foster, Hall, Barret & Smith, of Shreveport, for appellant.

Wise, Randolph, Rendall & Freyer, of Shreveport, for appellee.

McGREGOR, J.

On November 19, 1930, plaintiff was a passenger on one of defendant's street railway cars, being transported from the business district of the city of Shreveport to her home on Stephenson street, near its intersection with Thornhill street, along which at that time defendant's street car line ran. As the street car was running along Thornhill street on schedule time, and before it reached the intersection with Stephenson street, the plaintiff gave the usual signal indicating her desire to leave the car at the next stop. The car stopped at the intersection in the usual manner, and she alighted without attracting the attention of the motorman or any one on the car. She alleges, however, that as she was alighting from the car she discovered that the step had not been properly and sufficiently lowered and adjusted to insure her safe exit from the car, and that because of this fault and negligence of the defendant she was injured in her attempt to alight.

Her description of how she was injured is found in the following paragraph of her petition: "Petitioner shows that when the car stopped at said intersection, she went to the door preparatory to alighting from the said street railway car, and that the operator of said car opened the door of said car, thereby inviting the petitioner to alight therefrom; and, that petitioner thereupon commenced her exist from said car, placing her right foot forward, intending to place same on the step of said car; that when her foot struck the step, the step was not level as it should have

*Rehearing denied May 4, 1932.

been, but, on the contrary, was turned up at some forty-five degree angle from the ground; and that as petitioner placed her weight thereon the step suddenly went down and hurled your petitioner around causing her to lose her balance and to fall with great force against the side of the door and car, the weight of her entire body being thereby thrown to her right foot, leg and ankle, causing a sprain of her right ankle and the entire right leg and side of her body, and causing the twisting of her entire body and giving her a violent jolt."

It is particularly alleged that the failure of the step of the car to come into a proper position was the direct and proximate cause of the accident and the injuries that she received as a result thereof. The alleged failure of the step to come into proper position is said to have been due either to negligence in operation by the defendant's motorman in charge of the car or to a defect in the mechanism of the door and step.

It is alleged that as a result of plaintiff's partially falling out of the car she is suffering from varicose veins, sprains of her right ankle and leg, and sacroiliac joint, as well as an injury to the sciatic nerve. She has brought this suit against the defendant for damages in the sum of $23,250, which she itemizes as follows:

For permanent physical injuries,
varicose veins and injury to the
sciatic nerve..................... $20,000.00
For pain and suffering.......... 2,500.00
Physician's charges............. 250.00
Medical expenses to be incurred 500.00
                                 _____
    Total                        $23,250.00

In its answer the defendant denies all negligence alleged against it, and specially alleges that, if plaintiff received any injury in alighting from its street railway car, it was due solely to her own negligence, and in the alternative contributory negligence is pleaded.

On trial in the lower court the plaintiff's demands were rejected, and her suit for damages was dismissed. From that judgment she has appealed.

### Opinion.

When plaintiff discovered that she was injured, she walked to her home three or four doors distant from the car line, and immediately called her daughter-in-law over the telephone, who lived in the same block just a few doors away. This daughter-in-law gave her first-aid treatment and whatever attention she could. No physician was called until the morning of the next day, November 20th, when two physicians responded to her call. These physicians co-operated in their treatment and brought her all the relief possible. On the following day, November 21st, the defendant was notified of the accident, and two representatives of the company were sent to her home to make an investigation. At this time her statement of how the accident occurred was written down by a representative of the defendant company and was read to and signed by her in the presence of several members of her family. She was then taken to a sanitarium in the city of Shreveport, where she remained for a few days.

The car on which plaintiff was riding just prior to receiving the injury described in her petition was what is known as a one-man car. All passengers enter at the front end of the car but make their exit at either end, depending upon circumstances. The doors of the car, both exit and entrance, are mechanically operated by the motorman through air-controlled appliances. This control is exercised through the manipulation of a lever which cuts off the electricity, applies the air brakes, opens the door, and lets down the step, all in one operation. The door folds in the middle, and, when it is opened by the operator, it folds toward the left. While it is going through this process of folding, the step opens outward and downward. The lowering of the step is a little faster than the opening and folding back of the door, so that, when the step reaches a point where it is level and horizontal, the door opening is not quite complete. If the step is halfway down, or standing at an angle of forty-five degrees, the door will be less than one-half open.

As will be seen from the quotation from her petition above, the plaintiff alleged that the defendant's car stopped at the street intersection in response to her signal given in the usual manner; that the operator of the car opened the door, thereby inviting her to alight therefrom; that she presumed by the door being opened everything was in readiness for her safe exit; and that, acting upon this presumption, she proceeded to leave the car by placing her right foot forward, intending to place it upon the step which she presumed was in a firm and level position. She then alleges, however, that when her said right foot struck the step she discovered that it was not level, but that it was turned up at an angle of forty-five degrees. She states then that the step being in this position caused her to fall with great force against the side of the door and car with the weight of her entire body thrown to her right foot, ankle, and leg, causing sprains in her ankle, leg, and sacroiliac joint, and in addition thereto causing varicose veins and an injury to the sciatic nerve. Her testimony on the trial of the case varies somewhat from the allegations of her petition. In her petition she alleges that the operator opened the door, thereby inviting her to alight from the car. The natural inference from this allegation is that the door was completely open, and that

while and after it was completely open the step was just halfway down. If it is true that the door was completely open, then the plaintiff had a right to consider that as an invitation to her to make her exit from the car with the assurance that it would be done with safety to herself. But throughout her testimony she testified that, when she started to make her exit from the car, the door was only partly open. In the very first portion of her testimony, in response to questions propounded to her by her own attorney, she said:

"Q. How close were you to the front of the car? A. I lacked two seats of being to the front.

"Q. Now state in what manner you approached the front of the car? A. I got up and walked to the front and when I got there, I had some packages in my hand and I stepped on the step and when I stepped on it, it gave way and I fell and struck my right hip and then in order to catch myself, I stepped with my left foot and that threw me over the other way.

"Q. How did you fall? A. I fell against the car.

"Q. You did not fall to the pavement? A. No, sir.

"Q. Mrs. Wylie, was the door of the car opened when you stepped down? A. No, the door was opened partly.

"Q. Who opened it? A. The motorman.

"Q. You said that you had some packages in your left hand? A. Yes, sir.

"Q. Were those packages large, small or what? A. They were medium.

"Q. Mrs. Wylie, when you started out of the car, did you step down forward, or backward? A. No, I started forward.

"Q. You just made a step down? A. Yes, sir, with my right foot.

"Q. Will you state, just what happened when your right foot reached the step? A. I stepped down with my right foot and the step went down, and I knew I was falling, and fell against the railing on the side and struck my hip, then to protect myself, I stepped with my left foot and that threw me on that side and then I stepped to the pavement and my ankle careened then."

It will be noted from this testimony that plaintiff is very clear that she observed that the car door was not completely opened. She says: "No, the door was opened partly." Later on, while she was under cross-examination by counsel for defendant, she said: "It looked like it was open so I could get out." That portion of her testimony in which she used this expression is as follows:

"Q. You say as you approached this door, I think you said that it was partly open and the step was down? A. Yes.

"Q. About how much would you say; was it half, one third, or three fourths? A. It looked like it was open so I could get out.

"Q. You thought it was open wide enough for you to get out? A. Yes, sir.

"Q. It was partly closed? A. Yes, sir."

On November 21, 1930, the day on which the defendant company was notified concerning the alleged accident, in accordance with the usual custom a written statement of plaintiff's version of the affair was prepared, and she signed it in the presence of several members of her family. At the trial of the case this document was introduced in evidence by her without any qualifications or reservations, so that she is bound by all the statements made therein. In this she states that, when she stepped forward, the step was not down to its proper place, by about eight or ten inches. She stated positively that she did not fall, but that it was the "jar or jerks" that caused her injury. In the conclusion of the statement, she said that she did not notice that the step was not completely down until she stepped on it, but that she did observe that the door was only about two-thirds open as she stepped out to place her foot upon the step.

As far as is disclosed by the testimony, during the latter part of plaintiff's ride home on the occasion of the accident there were only two other passengers on the car, and their identity was disclosed by the plaintiff herself. Usually when accidents of any kind occur with reference to or in connection with defendant's street railway cars the operators take the names and addresses of all passengers. In this case this was not done, for the very good reason that the operator knew nothing of the accident at the time it was occurring, and the defendant company was not notified concerning it until two days thereafter. The two passengers referred to were Miss Sara Lena Groner, who left the car several blocks before plaintiff left it, and Mr. Bruce Donald, who left it one block after the plaintiff.

Miss Groner was called as a witness for the plaintiff, and in her testimony she stated that as she approached the exit to alight the door was not completely open, and that, being in a hurry, she pushed it all the way and made her exit safely. She says nothing about the step being up at an angle. She was very cautious, and was therefore unwilling to risk going through the door until it was wide open. No accident occurred to her, and the fact that she made her exit safely corroborates the defendant's contention that whenever the door is completely open the step is completely down on a level and firm. Plaintiff admits in her testimony that she not only observed that the door was not completely open, but about one-third, but that she persisted in leaving the car while it was in that position, for the reason that she

thought it would open wide enough for her to get through. Had she been as cautious as her witness, Miss Groner, she would have waited an instant for the door to open, and this would have given the step time to be perfectly adjusted.

Mr. Bruce Donald, the other passenger on the car, testified that he saw the plaintiff as she approached the exit door before the car stopped, and that she made an awkward step and looked around and said something which he did not understand. He remembered nothing of an accident as she was making her exit. It is very evident that there was very little noise or commotion in the plaintiff's stumbling on the step which was not quite down, for the reason that Mr. Donald, who noticed her sufficiently to remember observing her awkward step inside the car, never observed her sufficiently in her exit to remember it. She probably stumbled just as she says she did, but it attracted no attention whatever from Mr. Donald or the motorman who opened and closed the door. It is unreasonable to suppose that the motorman closed the door without looking through it to see that the plaintiff was clear of the step and on the ground. So that, in spite of the fact that he was looking in her direction just as he closed the door, he saw nothing that attracted his attention.

Summing up the evidence, it is clear that about the following facts have been established:

(1) Just before plaintiff made her exit from the car, she observed that the door was only about two-thirds open.

(2) In spite of this observation, she persisted in proceeding to make her exit on the assumption that she could get through the door and that the step would be ready to receive her weight.

(3) Just as she was about to place her weight upon the step, after she had gone too far to draw back, she observed that the step was standing at a considerable angle and was not in a level and firm position. Naturally her weight pressed it down.

(4) As the result of her thus stepping upon the moving and unstable step, and as a result of her sudden effort to recover her balance, she sprained her ankle, leg, and sacroiliac joint and bruised her body.

■ Defendant produced mechanics to testify as to how the exit door and the step were connected and operated. Under this testimony it was conclusively proved that, when the mechanism is working properly, the step is always lowered a little faster than the door opens, and that it is completely down by the time the door lacks two or three inches of being open completely. It was also proved that on the day of the accident the mechanism of the door and step of the car in question was in perfect working order, and that from the time when this car had been reconstructed into a one-man car this mechanism had never been out of order, and that all during the time from the date of the accident to the trial of the case it had remained in good condition. Hence the probabilities are that it was not out of order at the time when plaintiff made her exit. Since this is true, and since, under plaintiff's own testimony, the door lacked about one-third of being open when she stepped out and found that the step was not in a level position, the irresistible conclusion is that she left the car too soon, and that the fact of the door being only partly open should have been a sufficient warning to her not to step out without making sure that everything was in readiness to receive her. Her contention is that the mechanism was not working perfectly. In this she is not sustained by the evidence. To substantiate this contention on her part, Miss Groner was produced as a witness. But the effect of her testimony is to corroborate the defendant. She found the door lacking a little of being open, and she pushed it back. If, at the time she found the door lacking just a little of being open, she had found the step standing considerably upward, her testimony would have been valuable for the plaintiff, but such is not the case.

■ In their brief counsel for plaintiff state that the defendant had knowledge of the defective condition of its appliance and let the public use it in that state; that the motorman paid no attention to the hazard to which the passengers were being subjected, and did not even glance around to observe whether the known defect was imperiling or injuring those intrusted to his care. We do not think the evidence justifies this position. The defendant does not admit a defective condition of the appliance, but, on the contrary, it proved that it inspected it regularly and that it had always been in perfect working order. There is no evidence that the operator neglected any of his passengers. It is true that he remembers nothing of the incident, but that is not remarkable. The occurrence was not calculated to attract his attention. One proof of that is that Mr. Donald saw the plaintiff just as the door was about to open and saw her making an awkward step. He remembers nothing else. It is more than likely that he saw her all the time until her weight struck the ground. It appeared to be nothing more than a hurried exit. He may have seen her stumble as she was leaving but he probably thought of it as another awkward step. Certainly it did not attract his attention. The motorman no doubt was looking at her too, but it did not impress him. In the very nature of things he is bound to have been looking at her. Otherwise he would not have known when to close the door.

In his testimony as to his action on the occasion of any passenger alighting, he said:

"Q. Now where you have one passenger alighting, what do you do while they are alighting? A. I look ahead, then as the passenger steps off I look around to see that the step is clear then I release the air and the door closes and I go ahead.

"Q. Was there anything to keep you from seeing if the lady had been thrown against the side rail or the front, or the side or any jar in getting off? Was there anything to keep you from seeing such an occurrence? A. I would have seen it.

"Q. Now was there anything to keep you from hearing the noise of the step jarring down, while you were sitting there in the front? A. No, sir."

It must be remembered that this alleged accident was not known by the defendant until full two days after it had occurred. Certainly the motorman could not then remember the details of any particular passenger's exit from his car, in the absence of anything that particularly impressed his mind with it.

Counsel are correct in stating in their brief that, when a passenger is injured, the burden of proof is on the carrier to show that it is free from negligence. In the case at bar, plaintiff alleges the specific act of negligence with which she charges the defendant, and that is a defective operation of the exit step. That is the only charge against which the defendant is called upon to defend itself. In doing this, it has shown that this particular appliance was in perfect working order at the time, and that it has never failed to be in good condition. This is really sufficient proof, and defendant is not required under the decision cited by plaintiff to show how and why plaintiff was injured. In other words, defendant had only to show the non-existence of the defects alleged upon. It might have been impossible for defendant to show how and why plaintiff was injured. People often stumble and fall from steps. It could easily have been that plaintiff placed her foot on the step after it was completely down and by a sudden turning of her ankle she could have fallen and broken her limb. How could any of defendant's operators be able to testify as to how or why plaintiff fell under those circumstances? It could only be required to show that the step was levelled and in good condition. But in the case at bar the defendant has been able to prove both how and why the accident occurred, and it has been enabled to do this by the evidence of the plaintiff herself. Defendant has explained very minutely the mechanism of its door and step. It has shown that, when the door lacks as much as one-third being open, as plaintiff states it was, the step is not ready to receive the passenger. Therefore, when plaintiff made her exit under these circumstances, she did it negligently. It is contended that plaintiff is not supposed to know the mechanism of the appliance in question, but it is common knowledge how street cars operate. People who ride them practically every day as plaintiff does certainly observed that, when the door is closed, the step is folded up. So, when plaintiff first stood in front of the exit door, even before it began to open, she knew that the step was folded up entirely. Everyone knows that. She knew that it was necessary for the door to be opened for her to leave the car, and her intuition is bound to have dictated to her that she should wait until it was open all the way. She ought to have known that she should not try to go through the door while it was being opened. To do so is negligence of the worst sort. So that the defendant in this case can go further than the law required it to go by showing how and why the plaintiff was injured. Not only has it shown that the step was in perfect working order, but it has shown also that plaintiff negligently went through the door before it was opened sufficiently, and that that is how and why she was injured. Counsel rely upon several authorities cited, which we shall discuss in order.

Hamilton v. Louisiana Ry. & Nav. Co., 147 La. 616, 85 So. 611. In this case the defendant had stopped its train, and the conductor had given the signal for the passengers to alight. It was the custom for the train to stop so that the passengers could step from the coaches to an elevated platform. The coach in which plaintiff was riding did not stop at the platform as usual and as plaintiff thought it had done. When the plaintiff stepped off she fell into space, a distance of seventeen feet. It was held that defendant should have provided a safe place for the plaintiff to alight and had not done so. There is no parallel between the two cases.

Clerc v. Morgan's Louisiana & T. R. & S. S. Co., 107 La. 370, 31 So. 886, 90 Am. St. Rep. 319. In this case the plaintiff was injured by having his arm struck through a window while he was sitting down in the car in which he was riding. The object that struck him was the door of a refrigerator car standing on one of defendant's adjoining tracks. No question of safe exit is involved in the case, and it is not applicable to the case under consideration.

Edwin T. Shally v. New Orleans Public Service and Sewerage and Water Board, 1 La. App. 770. In this case the defendant's street car had no closed vestibule, and the plaintiff was permitted to go upon the platform and step down upon the steps of the car preparatory to alighting while the car was still in motion. While he was standing thus upon the step waiting for the car to come to a complete stop, he was struck by some pipe that was piled dangerously near

the cartracks and horribly mangled. It was held in that case that permitting the passenger to assume that position while the car was still moving was negligence. No such condition exists in the case at bar. Plaintiff could not leave the car until it was perfectly still. The door could not begin to open until the air brakes had been applied and the car was still. The open door is an invitation to leave the car, but until it is open the passenger has no right to presume that it is safe to step out.

Baptiste v. New Orleans Public Service, 13 La. App. 625, 127 So. 655, 657. This case is very similar to the one at bar. Affirming a judgment of the lower court, the Orleans Court of Appeal, in a two-judge opinion, said: "We, therefore, find that plaintiff fell from the step of the car as a result of its being tilted, or in an improper position, and that the defendant was guilty of negligence and carelessness in inviting a passenger to descend upon a step which gave way and would not properly support her weight and cause her, a passenger, to fall."

Judge Janvier wrote a very strong dissenting opinion in the above case, and cited the case of Cusimano v. New Orleans Public Service, 170 La. 95, 127 So. 376, in support of the doctrine that all a carrier has to do in cases of this kind is to disprove its own negligence and that it need not go further in its proof. In the case that we are considering now it is true the plaintiff fell upon and from the steps of the car as the result of its being tilted, but we find that it was negligence upon her part so to do. In the Baptiste Case the majority said further: "Even if we were not of the opinion that the evidence preponderates in favor of plaintiff, and that defendant has failed to show that it was free from fault, nevertheless, the case would clearly fall within the category of the decisions which hold that, on questions of fact, unless manifestly erroneous, the conclusions of the trial judge should be upheld."

■ In that case it is evident that the lower court held that the defendant had not proved itself free from negligence, and, since the evidence was close on the subject, the Court of Appeal resorted to the well-established custom of not disturbing the lower court in its findings of fact when those findings are not manifestly erroneous. So in the present case we should be fully justified in saying that, even if we were not of the opinion that the evidence preponderates in favor of the defendant on the question of its negligence, and that the plaintiff, by her own testimony, was injured through her own negligence, nevertheless the case would clearly fall within the category of decisions which hold that, on questions of fact, unless manifestly erroneous, the conclusion of the trial judge should be upheld. In this case the trial judge, after seeing and hearing all the witnesses testify, held that the defendant was guilty of no negligence and that the plaintiff was negligent.

Our conclusion is, therefore, that plaintiff's injuries are not in any way the result of defendant's negligence. The car was not operated with a defective step mechanism. On the contrary, the mechanism was in perfect working order. Plaintiff undertook to leave the car before the door was open, and in doing so she put her foot on the step before it was down. This action on her part was negligence, and it was the cause of her injuries. Our conclusion in this matter agrees fully with that of the trial judge. Not only do we find no manifest error in his finding of fact, but we think he is eminently correct.

Having reached the conclusion which we have, it is unnecessary to discuss the questions of contributory negligence and the extent of plaintiff's injuries.

For the reasons assigned, the judgment appealed from is affirmed; all costs are to be paid by the plaintiff appellant.