## JOHNSTON v. CITY OF MONROE.
### No. 4437.

Court of Appeal of Louisiana. Second Circuit.

April 28, 1933.

H. H. Russell, of Monroe, for appellant.

Theus, Grisham, Davis & Leigh, of Monroe, for appellee.

DREW, Judge.

Plaintiff sued for damages for personal injuries he received in a fall while alighting from a street car owned and operated by defendant. The acts of negligence alleged to have been committed by defendant are set out in articles V and VI of the petition, and are as follows:

"That the regular landing place at your petitioner's destination, and at which said car should have been stopped in order to permit your petitioner to disembark, was the intersection of Richardson Street with Lee Avenue, but that, notwithstanding this fact, the operator of said car, agent and employee of defendant herein and then acting in the scope of his employment, negligently, carelessly and without the knowledge of your petitioner proceeded about 75 or 100 feet past said intersection before bringing said car to a stop; that when the car had thus been stopped, at a point some 75 or 100 feet past the intersection, and when the door of said car had been opened by the operator, to permit your petitioner to alight, your petitioner, believing that the stop had been made at the proper point and with his grandchild still in his arms, proceeded to the door and attempted to alight therefrom; shows, however, that at the point where said car had been stopped there was a raised curb running alongside the streetcar tracks, separating the paved portion of the street from the portion thereof upon which said tracks were laid, and that your petitioner, in alighting from said car with his grandchild in his arms, and unaware that the step of said car was in juxtaposition to said raised curbing, stepped partly upon said curbing, which caused his ankle to turn, throwing him violently to the pavement and causing the injuries hereinafter described.

"Your petitioner shows further that at the point where said car had been stopped, the street was not lighted, the nearest street light being at the intersection of Richardson Street and Lee Avenue about 100 feet away and behind said car; and that the act of said operator of said car in stopping the same past the intersection, opening the door for your petitioner to alight, and permitting your petitioner to attempt to disembark without any notification that the car had not been stopped at its regular landing place, and without any warning whatever of the danger attendant upon disembarking at that point constituted gross negligence and carelessness committed in the scope of his employment which was the proximate and sole cause of your petitioner's accident and resulting injuries, and for which, defendant is responsible."

Defendant denied liability and denied that it was negligent in any respect. It does not plead contributory negligence, but bases its defense solely on the ground of want of negligence on its part, and alleges the accident and resulting injury to plaintiff were caused either by the negligence of plaintiff, or that the accident was unavoidable.

■ The accident was certainly not unavoidable and was therefore, under the pleadings, caused by the negligence of plaintiff or defendant and, under the law of this state, in the absence of a plea of contributory negligence, if the defendant was negligent, it is liable.

The lower court found for plaintiff, and defendant has appealed.

Plaintiff and defendant are fully in accord as to the law applicable to the duty of a carrier to provide a safe landing place for a passenger and fully subscribe to the rule laid down in the cases of, Thomas v. Shreveport Rys. Co., 13 La. App. 212, 127 So. 119, Le Blanc v. Sweet et al., 107 La. 355, 31 So. 766, 90 Am. St. Rep. 303, Patton v. Pickles, 50 La. Ann. 864, 24 So. 290, Hopkins v. New Orleans Railway & Light Co., 150 La. 61, 90 So. 512, 19 A. L. R. 1362, which is, that a carrier is bound to exercise the strictest diligence in receiving a passenger, conveying him to his destination, and setting him down safely as the means of conveyance and the circumstances of the case will permit.

They likewise agree to the rule laid down in the cases of Baptiste v. New Orleans Public Service, 13 La. App. 625, 127 So. 655, Cusimano v. New Orleans Public Service, 170 La. 95, 127 So. 376, which is, where the plaintiff proves that he was a passenger on a street car and that he fell from the steps of the car while alighting, the burden is on the defendant to prove itself free from fault.

And in Leveret v. Shreveport Belt R. Co., 110 La. 404, 34 So. 579, 581, where the court held: "It has been repeatedly held that parties alighting from or embarking upon a train are authorized to act upon the assumption that the officers of the company have taken proper precautions to insure their safety."

And the courts of this state have held that it is the duty of a carrier to provide sufficient lights at the places where passengers are to be discharged or taken on, to insure safe ingress and egress. Reynolds v. Texas & P. Ry. Co., 37 La. Ann. 694; Moses v. Louisville, N. O. & T. R. Co., 39 La. Ann. 649, 2 So. 567, 4 Am. St. Rep. 231.

The law being certain and there being no disagreement between plaintiff and defendant as to the law, the case then evolves itself into one of facts alone.

It is admitted that Exhibits A and B are cross-sections of the neutral ground, curb and paved roadway at the point at which the streetcar stopped on the occasion in question,

and a plat of the intersection of Lee avenue with Richardson street, both being prepared by the assistant city engineer at the joint request of counsel for plaintiff and defendant, and are correct. The lower court had the benefit of these exhibits, which we have not, as they are not included in the record. The only evidence as to the accident is that of plaintiff and the motorman, and there is very little difference in their testimony on facts that is material.

Plaintiff was visiting at his son's home, which was located about 100 to 125 feet north of the intersection of Richardson street and Lee avenue, in the city of Monroe. About 8 o'clock at night, he took his one and one-half year old grandbaby in his arms and boarded the streetcar at the intersection, paid his fare, and informed the motorman that he wanted to give the baby some air and would ride out to the end of the car line and return. On the return trip, there was no other passenger on the car. When the car arrived at Richardson street and Lee avenue, it did not stop, but continued past the intersection, a distance of approximately 125 feet, where it was stopped, the door opened, and plaintiff invited to alight. The place at which the car stopped was directly in front of plaintiff's son's home, but was not a regular stopping place for the car, Richardson street and Lee avenue being the regular place for the car to stop. Plaintiff made no request that the car be stopped there, and the only words that passed between him and the motorman when the car was stopped, were apparently addressed by the motorman to the baby, "Well, we are home again."

Plaintiff attempted to alight from the car and what happened can best be shown by his testimony, which is uncontradicted on this point. His description is as follows:

"A. Well, when he stopped—seemed to be directing his words to the child—he says 'Well, we are home'. He opened the door. I walked to the door. I had the child on my left arm, and I caught this rod or handhold that you hold to on the car and I stepped down on the apron of the streetcar with my left foot, and then stepped down with my right foot, and then I started to step off. I was looking down, of course, at the apron, etc., in order to be careful with the child. I looked for any obstruction or anything like that, I didn't see any. I turned loose of this rod to step down—as I started to step down I turned 'loose the rod, and immediately what happened was I caught my heel on that boulevard curb, turned my foot over and fell. * * *

"A. Well, my foot turned and I grabbed the child with my right hand, which was simultaneously almost as I turned loose, and I turned my foot and seems to me like I swung around on my foot, and I caught the child and pulled her up on top of me to keep from fall-

ing on her. And I was falling to that side and I kinder straightened out and fell on my back—on the lower part of my back, with my head to the north or northwest."

The intersection of Richardson street and Lee avenue is entirely paved and is lighted by one 80 or 100 Watt light hung on a pole on the south and opposite side of the street from that on which plaintiff attempted to alight from the car, and necessarily any light it would give to the street 125 feet away was more or less cut off by the car itself, which was between plaintiff and the light.

■■ We judge from the testimony that the track ran north and south. When the car stopped, it was going north and plaintiff attempted to get off on the west side. As before stated, the intersection was entirely paved. Just north of the intersection, the street was paved only on each side of the track, that part covered by the track and for a few feet each side of the track not being paved. Next to the track where the pavement ended, was a curb standing 3 or 4 inches higher than the pavement, and when the step was down, the curb was 9 inches west of the step and about 1½ feet below the step. When plaintiff stepped from the car step, he placed his left heel on this curb, believing he was stepping on solid, smooth pavement. When he removed the right foot from the car step, thereby placing his entire weight on his left foot, he fell, as he above described it. He testified that he thought the car had stopped at the regular stopping place at Richardson and Lee, and he was not informed or warned by the motorman of the curb. There is no evidence to contradict him on this point. Where the car should have stopped was the regular stopping place and he was justified in believing it had stopped at the place where he got on it. The place he was invited to leave the car was not a safe place to discharge passengers, and defendant is liable for damages plaintiff received by inviting him to leave the car at this place.

Defendant contends that plaintiff should have known that he was getting off the car at a place other than the intersection; that his son lived just across the street from where he attempted to alight; and that his family was sitting on the gallery, with the light on in plain view. We do not think the evidence shows any light to have been burning on the gallery, and it is not easy to discern objects on the outside when riding in a lighted car at nighttime. He testified that he did not know he was getting off at a place other than the regular stopping place, and the lower court believed his testimony. He had a right to assume the car would only stop at a regular stopping place, until told otherwise. He had a baby in his arms, to the knowledge of the motorman, and he shows by his testimony that he used every care to alight safely. He is not contradicted, and he was justified in acting on the assumption that he would not be put off at an unsafe place.

■■ The lower court found the facts to be in favor of plaintiff, and there is no manifest error in its findings of fact. It awarded plaintiff judgment in the amount of $3,500, and he has answered the appeal praying that the judgment be increased to $8,000.

Defendant contends that in any event, the judgment should be reduced to $1,000.

Plaintiff received a severe sprain to his left ankle, and a sprain of the sacro-iliac joint. He is a barber by trade, 53 years of age, and in the past has earned about $20 per week. He was unable to work at all for a period of fourteen weeks and since that time often has to leave his work and rest for a period, due to the pain in his back and ankle. He has suffered much and will continue to suffer as times goes on. Only one doctor testified and he thought plaintiff's injuries permanent. He did not express an opinion as to whether he thought plaintiff would get worse or better in the future.

It is not shown what difference, if any, is in plaintiff's earning power now and before the accident. He is working regularly at his trade, but suffers a great deal from having to work, which requires him to stand on his feet. Due to the fact that plaintiff has to leave his work at times, no doubt decreases his earning power some, and further, a man who works while in pain cannot accomplish as much as a well man. Plaintiff will suffer as long as he lives. It is not a continuous suffering, but an intermittent suffering and no doubt very bothersome. He cannot walk a great distance at one time without great pain. We do not think the award is excessive, but we think it sufficient.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court is affirmed, with costs.