No. 3667

Second Circuit

BRISOLARA v. CADDO-TRANSFER & WAREHOUSE CO.

(April 24, 1930. Opinion and Decree.)

Pugh, Grimmett & Boatner and F. Simon, of Shreveport, attorneys for plaintiff, appellee.

John G. Gibbs, of Shreveport, attorney for defendant, appellant.

ODOM, J.    The defendant is a corporation organized under the laws of this state and operates motorbuses in which passengers are carried over the highways for hire.   Plaintiff took passage on one of defendant's buses at Minden to go to Homer, and paid the usual fare.   On the way, the casing on the right front wheel blew out, causing the bus to turn over and go off the road into a ditch, and plaintiff was injured.   Plaintiff was a traveling salesman, selling shoes on commission. He brought this suit to recover damages for his personal injuries and for the loss of commissions which, he alleges, he could and would have earned during the time he was disabled on account of the accident and resulting injuries.

Defendant admits that plaintiff was a passenger for hire on one of its buses and, as we understand, its counsel concedes that insofar as the issues here involved are concerned, it is a common carrier of passengers and that its duties and obligations toward its passengers and its liability for such injury as may befall them while being transported are the same as those pertaining to carriers of passengers for hire generally.

As a defense, it is contended that if it be true that a casing on its bus did blow out causing a wreck in which plaintiff was injured, it is not liable because such blow-out was due to no fault on its part; and, second, that plaintiff's injuries, if he received any, were trivial and not sufficient to warrant a recovery for damages, and the claim for loss of commissions is conjectural and cannot be made the basis of a judgment for damages.

1.  The relationship which existed between plaintiff and defendant was that of passenger and carrier and was contractual. Plaintiff paid the required fare for passage on the bus; by receiving the fare for passage and accepting him as a passenger, defendant impliedly obligated itself to furnish him with safe passage and to set him down without injury.   Plaintiff was injured while a passenger, and it is not suggested that his injuries were due to any fault of his own.   Defendant therefore breached its contract with plaintiff for safe passage.

To escape liability, defendant set up the plea that the blow-out which caused the wreck was due to an "unavoidable accident" and that it had used due care.

The rule stated by all text-writers and the settled jurisprudence of this and other states is that a carrier of passengers for hire owes to them the duty of exercising the highest degree of care for their safe transport that is consistent with the conduct of such business; and, further, that where a passenger is injured by an accident due to a "defect in any of those things which the carrier is bound to supply or is the result of a failure in any respect of the carrier's means of transportation, or the conduct of its servants, a presumption of negligence arises against the carrier in an action by the passenger for the injuries thus caused," and that the burden of proof is upon the carrier to show why the contract of carriage was not fulfilled.

In the case of Brannon vs. Yazoo & M. V. R. Co., 129 La. 916, 57 So. 172, the Court said:

"As the answer admitted the contract of carriage and a violation of the contract on the part of the defendant, the only question before the court was the quantum of damages to be awarded to the plaintiff for the breach of the contract. The burden is on the defendant to show that the inexecution of the contract on his part was occasioned 'by a fortuitous event or irresistible force.' C. C. art. 1933, No. 2. 'Those accidents are said to be caused by superior force, which human prudence can neither foresee nor prevent.' C. C. art. 3556, No. 14. 'Fortuitous event is that which happens by a cause which we cannot resist.' Id. No. 15." Garrow vs. Seattle Taxicab Co., 135 Wash. 630, 238 P. 623, 45 A.L.R. 297-306; 5 R.C.L. 74-77; LeBlanc & Wife vs. Sweet et al., 107 La. 355, 368, 31 So. 766, 90 Am. St. Rep. 303; Spurlock & Wife vs. Shreveport Trac. Co., 118 La. 1, 42 So. 575; Hopkins vs. N. O. Ry. & Light Co., 150 La. 61, 90 So. 512, 19 A.L.R. 1362.

In its efforts to discharge the burden which rested upon it, defendant called one witness, Mr. King, the bus driver. He was asked two questions about the tires:

By Mr. Gibbs (counsel for defendant):

"Q. The tires on these buses are inspected every morning before they leave, are they not?

"A. Yes.

"Q. They were inspected on that occasion?

"A. Yes, sir."

He was not asked to state, and did not state, what the inspection showed. There is nothing to show whether the casing was new and heavy enough to carry the load, or whether light or old and worn. So far as we know, the casing may have been thin and too light for the load, or old, worn, and otherwise defective. Defendant left the court totally in the dark as to the condition of its equipment. It follows necessarily that we must hold defendant liable.

2. Defendant urges the point that plaintiff's injuries were trivial and not sufficient to warrant a judgment for damages and he cites the case of Bianchi vs. Del Valle, 117 La. 587, 42 So. 148. Plaintiff's demands were rejected in that case, but not upon the ground that her injuries were trivial. Of course, if plaintiff received no injury which damaged him, he cannot recover. He was injured to some extent and suffered some damage. The bus turned over and he was badly shaken up and excited. He received a slight wound on the head and apprehended, it seems, that his skull was fractured. He was carried to Homer within a short time and consulted Dr. Campbell, who says that he found practically nothing the matter with him, although he admits that his examination was casual. Plaintiff rode to Shreveport in defendant's bus and from there went to New Orleans by rail. He testified that he was confined to his bed for three days, during which time he suffered considerably from pains in his head. He was confined to his room, it seems, for five additional days, after which he was able to leave his room and go upon the streets. He testified that he was kept from work for two weeks in all. Plaintiff was visited in New Orleans by Dr. Rocquet, who testified as follows concerning the injuries:

"Suffering from extensive contusions and abrasions of both legs and a very severe contusion of the head. * * * Well, the contusion of the right leg extended from the knee to the ankle, and, on the left leg, about half way from the knee to the ankle, and the contusions of the head were on the top of his head and the forehead."

Dr. Rocquet's testimony was taken nearly a year after he visited plaintiff, and

he says that his recollection of the case is somewhat indefinite. It is clear that plaintiff had no broken bones and no permanent injuries or scars. His injuries, we think, were slight. However, he suffered some pain and inconvenience and probably some loss of commissions. His physician charged him $6.

The district judge awarded him $506; he probably took into consideration plaintiff's small loss in commissions, which was allowable in a case like this. Wilkins vs. Featherstone Transfer Co., 156 La. 601, 100 So. 732.

We think the judgment does substantial justice to all parties, and it is accordingly affirmed, with costs in both courts.