McBRIDE, '.'Judge.
On July 12, 19.50, plaintiff, while riding .as a passenger in a Yellow Cab, sustained personal 'injuries when the Yellow Cab ■collided with another taxicab. Plaintiff Instituted this suit seeking to recover $4,-'808.10 from the owners of the taxicabs, their liability insurers, and the drivers of both <cabs. The trial judge rendered judgment in 'favor of plaintiff for $2,308.10, casting fhe defendants solidarily, and from •fhe judgment defendants have appealed. Plaintiff 'has ’filed answer to the appeal, praying 'that fhe judgment be increased to •fhe -sum -o'f $3,808.10.
'The -only -question involved is that of ■quantum, for -the appellants admit liability.
The -amount -of the award is constituted ■of fhe 'following items, as per the written nea-sons if or ¡judgment: pain and suffering, $1,000; loss of earnings (July 12-August 31, 1950), $1,182; medical expenses, etc., $126.10.
The record shows that plaintiff suffered three broken ribs, the fourth, sixth, and eleventh, and contusions and bruises of the shoulder and the left hip, from which injuries he experienced pain, especially in his shoulder, legs, right side of the chest, and left hip. Plis chest was strapped from the armpit to the hip until July 21, 1950, and because of the summer heat the strapping irritated the skin. Plaintiff was hospitalized at Touro Infirmary from the date of the accident to July 17, a period of six days, suffered intensely for four weeks, and continued to experience pain for two additional weeks. The ribs did n-ot completely heal until approximately six or seven weeks.
For the physical injuries the trial judge allowed $1,000. It was shown that such injuries as were sustained by plaintiff are of a painful nature, and considering the period of hospitalization, plaintiff’s discomfort and mental anguish for six weeks, we believe that the amount should be increased to $2,000, which will do substantial justice.
The hospital and medical expenses amounted to $126.10, which is not in dispute.
The item of $1,182.00 for loss of earnings is stoutly contested by appellants. In computing the amount, the trial judge took into consideration the earnings for the first six months of 1950, averaging $709.51 per month. The judge found that plaintiff had been incapacitated for fifty-one days, or approximately one and two-thirds months, for which allowance was made at the average rate.
Plaintiff, who is fifty-six years old, has been engaged in the business of selling stocks and bonds for the past twenty-seven years. He claims that he has a large following of customers, and -“everywhere I go they do business with me.” About ninety-five per cent of plaintiff’s sales were made to banks and institutions.
At the time of the accident, plaintiff was employed by Weil & Company. On *168 June -16, 1950, lie had submitted his resignation to Weil & Company to become effective as of July 31, 1950. On September 1, 1950, ■ plaintiff engaged himself as manager of the municipal bond department with Schweickhardt-Landry & Company.
Plaintiff claims that he was incapacitated from July 12, 1950, until August 31, 1950. He testified that after being discharged from the hospital he could not ride in his automobile and found it necessary to come downtown on streetcars, in which he had to stand because of the pain produced by a sedentary position.
The evidence shows that in July, after the accident, plaintiff did go to the office of Weil & Company during the period he claims he was disabled, and made some sales via telephone, but that they were just ■"little orders” because he could not put forth his full efforts. Plaintiff stated that the major part of his business consisted ■of the underwriting or sale of securities for future delivery, on which he would not be paid commission until as much as two months later, when the securities were actually delivered to the customer and payment for them was made. There is nothing establishing with certainty how much of plaintiff’s business ,was done on a “cash and carry” basis.
At any rate, his earnings for the first seven months of 1950, including July during a part of which he claimed to be incapacitated, are itemized as follows: January, $861.79; February, $554.68; March, $1,007.49; April, $403.20; May, $182.88; June, $1,247.04; July, $941.48 — total, $5,-198.56. The average per month is $742.65.
It will be noted that in 'July plaintiff’s commissions were the third highest for the period. Plaintiff’s contention is that the July figure is largely composed of “backlog commissions,” that is to say, for sales which he had initiated during prior months for future delivery, but we are not informed as to the ratio between the backlog commissions and cash and carry sales.
The principle that a claimant is entitled to a recovery for his loss of earnings, so long as they are not of a speculative nature, is too well settled to require the citation of authorities. Commissions lost by a salesman are allowable in a case like this. Wilkins v. Featherstone Transfer Co., 156 La. 601, 100 So. 732; Lynch v. Fisher, La.App., 41 So.2d 692; Brisolara v. Caddo-Transfer & Warehouse Co., 13 La.App. 27, 127 So. 57. But it is somewhat difficult to compute the loss of earnings where the injured plaintiff is not on a fixed salary or income.
In Lynch v. Fisher, supra, the plaintiff was a real estate salesman, and a recapitulation of his earnings for a six-month period before the accident showed an average of slightly less than $900 per month. During his incapacity, three months, he earned nothing. The court concluded that plaintiff was entitled to $1,800 (or a two-month’s allowance) for the three months of incapacity.
Plaintiff in the instant case takes the position that commissions from July, 1950, should be disregarded, because of accruals from prior sales. If this be true, then, by the same token, included in the earnings for January and February, 1950, are accruals from 1949 sales, which are figured in our computation.
Because of the unusual circumstances of the case, our opinion is that the most satisfactory criterion for fixing the loss is the monthly average for the seven-month period. July should be included, as plaintiff admits that he did business by telephone from the office of Weil & Company, notwithstanding his chest was strapped and he suffered pain. We think that a fair settlement would be to allow plaintiff to recover $742.65 for the month of August, the average of the earnings for 'the seven-month period, less the $182.93 actually earned, or $559.72. Under plaintiff’s agreement with Schweickhardt-Landry & Company, he was to commence work as soon as possible after recovery from the result of his injuries, and because of pain experienced during August plaintiff states he did not attempt to go to work for the new employer. Plaintiff is certainly entitled to an allowance for his loss of time during August, and the allowance which we make *169 would bring bis income for tbat month to a parity with the prior seven months of 1950.
We might say in passing that in September, with Schweickhardt-Landry & Company, plaintiff earned only $651.64.
For the reasons assigned, it is ordered, adjudged, and decreed that the judgment appealed from be increased to the sum of $2,685.82, and as thus amended and in all other respects the judgment is affirmed; costs of this appeal are to be paid by defendants-appellants.
Amended and affirmed.