This is a suit by John W. Mathes in his own right for $4,601.40 paid out for medical treatment of his minor son John L. Mathes, who was injured, it is alleged, through the gross negligence of the defendants. He also sues on behalf of his minor son for the sum of $25,000 for the injuries sustained by him.
The defendants in answer denied that either of them was guilty of fault or negligence, and specially pleaded contributory negligence on the part of young Mathes as a legal bar to recovery.
The case was tried before a jury, which rendered a verdict in favor of plaintiff in his own right for $3,500 and on behalf of the minor for $5,000.
On appeal to the Court of Appeal, the verdict and judgment was set aside, and plaintiff's demand in both capacities was rejected.
In its original opinion, the Court of Appeal based its conclusion on the finding that the defendants were not guilty of any primary negligence.
A rehearing was granted, however, and on the rehearing the original judgment was reinstated, not on the ground of want of negligence on the part of the defendants, but purely on the contributory negligence of young Mathes.
The case is before us for review of that judgment.
A brief statement of what we conceive to be the outstanding facts is necessary in order to determine the pivotal question; that is, whether the young man's conduct was such *Page 275 
as to amount in law to contributory negligence.
The collision which resulted in the young man being knocked down and both legs broken happened at the uptown intersection of Prytania street and Napoleon avenue.
There are two parallel street car tracks on Prytania street; the right-hand or river side track is used by cars coming down town towards Canal street, while the left-hand track or lake or wood side track is used by cars going out towards Carrolton.
Young Mathes lived with his parents on Gen. Pershing street.
He had been playing tennis at Audubon Park, and took a Prytania street car, intending to get off at Napoleon and catch a car for his home. The Prytania car stopped at the uptown side of the Napoleon intersection to allow passengers to get on and off. The young man alighted from the car at the rear end and proceeded behind the car to cross over to the wood side of Prytania street. As he emerged from behind the street car, he was struck by the left fender of a large Buick automobile owned by the defendant Gumbel and operated by the defendant Schwing. The two were on their way out to the Country Club.
It is admitted by the defendants that they saw the street car stop on the opposite side of Napoleon avenue as they approached the crossing. It is also admitted that they did not stop the automobile, but passed the street car, having their automobile in high gear, at a speed between 15 and 18 miles per hour.
The two defendants say that the reason they did not stop was that the street car had started to move across Napoleon avenue.
But we are convinced, as was the Court of Appeals on rehearing, that the street car had not started to move when the defendants passed it.
Among the traffic regulations of the city *Page 276 
with regard to passing street cars is the following:
"No vehicle shall pass a street car while same is stopped or about to stop to take on or let off passengers, except on the following streets, etc." Then follow the names of the streets to which the prohibition does not apply.
Immediately succeeding the above-quoted provision is the following:
"Excepting on the above mentioned streets, at every place where street cars regularly stop to take on or to discharge passengers, a space of not less than fifty feet shall be set aside as a safety zone, and shall be properly marked and designated as such. No vehicle shall pass through such safety zone while same is occupied by passengers about to board or who have just been discharged from street cars, nor shall any vehicle pass through said safety zone while street cars are stopped at said zone for the purpose of taking on or discharging passengers."
It does not appear from the record whether the required space had been set aside and properly marked off as provided in the ordinance.
But, assuming that it had not been so laid out and marked off, the fact remains that the defendants were expressly forbidden by both of the quoted ordinances from passing the street car while it had stopped to allow passengers to get off and on.
Their action in doing so was the grossest kind of negligence and an exhibition of a reckless and wanton disregard for human life and human safety.
They were bound to know that the street car had stopped either to let off or take on passengers, and that such passengers alighting from the car in the middle of the street were entitled, under the ordinance, to have the opportunity to move to a place of safety.
But, even more than this, the defendants *Page 277 
admit in their testimony that they were driving the car along the rails of the uptown or wood side track, and that the young man was knocked down and was sitting on the space between the uptown and downtown tracks when he was picked up. This is conclusive to our minds that the defendants not only violated the ordinance which forbade the passing of a street car which had stopped for the purposes stated, but that they passed in close proximity to the standing car instead of traveling next to the curb on the right-hand side of the street they were going out. The requirement of the city ordinance is that a vehicle must keep to the right and as near as possible to the right-hand curb.
The several photographs of the locus in quo introduced in evidence show that there was ample space over on the right-hand side next to the curb for the defendants to have traveled, and, if they complied with the ordinance instead of passing in the middle of the street in such close proximity to the street car, there would still have been a chance for the alighting passenger to have saved himself from being run over by the defendant's automobile.
We are in full accord with our learned brothers of the Court of Appeal in their last pronouncement, wherein they found the defendants guilty of a much higher degree of negligence than they attributed to the young man.
The contributory negligence on the part of young Mathes as found by the court consists in his failure, when passing from behind the street car, to stop and see that the way was clear before attempting to cross the street.
This ruling is based on certain provisions of the city ordinances which are as follows:
"Pedestrians shall cross streets only at right angles and at street intersections, and *Page 278 
shall not cross street intersections diagonally."
"Pedestrians should look before stepping from the curb, first to the left and then to the right, for vehicles."
"Pedestrians shall not step into that portion of the street open to moving traffic at any point between street intersections where their presence would be obscured from the vision of approaching traffic by a vehicle or other obstruction at the curb, except to board a street car, or to enter a safety zone at right angles."
"When alighting from street cars, pedestrians should be sure the way is clear before crossing behind a car."
It is obvious that the first and second quoted paragraphs have no application. Young Mathes did not step from the curb, and hence there was no occasion for him to look either to the right or to the left.
Neither did he step into a street open to moving traffic at a point between street intersections, where his presence would be obscured from the vision of approaching traffic by a vehicle or other obstruction at the curb.
The place where young Mathes was knocked down was not open to moving traffic at the time. Besides, the exception in this second paragraph authorized the passenger to enter or go to the safety zone at right angles.
So that, if there was any negligence to be imputed to the young man, it must be found in the first and fourth paragraphs.
The last-quoted paragraph, on which great stress is laid, in our opinion does not justify such a rigid construction, not to say such a harsh and hard application, as that given it by the Court of Appeal. All of the responsibility is put on the passenger alighting from a street car in a safety zone, and the automobile driver is exempted from any responsibility *Page 279 
whatever, though it is bound to be conceded that, if the defendants had obeyed the traffic requirements, the collision would not have happened.
The manifest purpose of the regulation requiring vehicles to stop was in the interest of the public and to protect passengers when getting on or off of street cars and to enable them, after alighting, to reach a place of safety.
If vehicles are permitted to wantonly and recklessly disregard such regulations, then the ordinances are a dead letter, and the passenger when getting off a street car is at the mercy of the automobile.
There is nothing in any of the city ordinances introduced in evidence which forbids a passenger from leaving a street car at the rear end. Nor is there any prohibition against a passenger when getting off from going behind the car to cross the street. The court in its opinion on rehearing recognizes this fact.
Indeed the ordinance clearly implies the right and recognizes the privilege of a passenger leaving the car to go behind it for the purpose of crossing the street.
The most that can be said of the ordinance to the contrary is that it is a suggestion, an admonition to the passenger to be cautious and to see that the way is clear before going out into the street, and this undoubtedly refers to such street or crossing as is open to moving traffic.
The provision is unlike in this respect the prohibition applying to automobiles. That prohibition is absolute, and declares in plain terms that no vehicle shall pass a street car while same is stopped to let passengers on and off.
Much has been said concerning the duty of the young man to have gone to the immediate line of intersection to cross the street, but *Page 280 
there is nothing in the ordinances requiring that.
As the passenger has the right to get off at the rear end of the car and go behind the car, it necessarily follows that he has the right to cross the street at right angles from that point. The entire space, from the line of intersection to the end of the car where the young man attempted to cross, for the purpose of making the ordinance effective in the interest of the safety of the passengers, must be regarded as constituting the intersection and the safety zone.
Beyond doubt the young man had the right to go to the actual line of intersection at the front of the street car and to pass along on either side of the street car to get there.
But, if he had attempted to have done so in this instance, he would have had to proceed along the street, and would have been run down by the defendant's automobile, which, as before stated, was running in close proximity to the street car. The street car extends beyond the rail, and so did the fender of the automobile extend beyond the rail on which it was moving. So that, in attempting in either way to cross the street, young Mathes would have been run into by the defendant's car.
A labored effort has been made to distinguish this case from the Jones Case, 123 La. 1060, 49 So. 706, 708, but there is little dissimilarity.
In that case a passenger got off the street car, passed behind it, and was attempting to cross the other car track, when an approaching street car struck him. There was an ordinance of the city which prohibited a street car from the opposite direction passing one that had stopped for the purpose of letting passengers on and off.
It was argued in that case, as it is here that, before the plaintiff crossed the street, *Page 281 
he should have looked to see whether or not there was a car approaching on the other track. The court in answering the contention said:
"The very object of the ordinance was to protect the citizen from the consequences of his own forgetfulness or imprudence in that respect."
"The important point is: `Was he [plaintiff] struck by the passing car just after he had alighted from the car on the other track and before he had time to cross the track?' He was, under the ordinance, entitled to have had time given him to do so, and that time was not given him."
"It is the duty of the court to see that that ordinance which was enacted under the police power for the public safety should be rigidly enforced in aid of the remedy for the mischief sought to be guarded against."
What was said there is appropriate here. Time has not altered the situation. If anything, there is more reason to rigidly enforce the ordinance in question than there was when the Jones Case was decided.
In the instant case the victim of defendant's negligence was not given any opportunity whatever to save himself from death or great bodily harm, for the very moment he stepped from behind the street car into the space between the two tracks he was struck by the fender of defendant's car. He had to pass beyond the street car in order to see if his way was clear, and as soon as he got into that position he was unexpectedly knocked down.
The case of Shelley v. Waguespack, 156 La. 256, 100 So. 417, 419, is relied on to sustain the holding of the Court of Appeal. The case bears little analogy to the instant case.
In that case there was no question of an automobile passing a street car in violation of *Page 282 
the ordinance. The plaintiff went upon the street without looking, and so close to the defendant's car that it was humanly impossible to bring the car to a stop without striking her. The lady was standing in a position of safety, and there was no indication that she intended to go upon the street. The driver was moving where he had the legal right to go; he saw the plaintiff, and he had every reason to believe that the plaintiff saw him.
It will be noted that the court found in that case that the driver of the automobile was without fault, for the court said that, "where, in a case like the present one, the pedestrian attempts to effect a crossing without exercising his senses of sight and hearing, and is run into by an automobile, whose driver is without fault, and who had no reason to anticipate the presence of the pedestrian in the street, no liability can possibly attach to the driver of the automobile."
How different the case is from the present one. Here the driver was at fault. He was where he had no right to be. He had every reason to anticipate that passengers were alighting from the street car and would proceed to cross the street as they had the right to do. Unlike the lady in the cited case, young Mathes did not stand between the tracks where defendants could see him and wait until the defendants were too close to stop the car, but he came from behind the car, and, just as he was in position to see that his way was clear, the car struck him.
If the holding of the Court of Appeal is to stand, then all traffic regulations governing both pedestrians and vehicles might as well be repealed.
For, if a passenger alighting from the street car in a zone of safety is required at his peril to see that no vehicle is approaching before crossing the street, then for the same *Page 283 
reason he must be sure that the way is clear before going on the street under the "go" or green signal.
We have not reached that period yet where the automobile can be permitted to monopolize the streets and roads, to the exclusion of pedestrians, in disregard and in violation of all traffic regulations, with perfect immunity.
We attach no probative effect to the statement of the young man that the accident was the result of his own fault. When he made the statement, he was in great agony and under the control of the two men who had run into him. At that time he did not know whether he was to die or get well, nor did he know whether he was being conveyed to the hospital or to the river or woods. The men were strangers to him. If he was in his right mind, it was more natural for him to exonerate rather than to charge the two men with being responsible. The men had an interest and a motive to draw the statement from the young man. They had to fear both civil and criminal responsibility.
Nor is any greater effect to be given to the statement made to the officer. The boy was still suffering and was crying. But, beyond all of this, the statement was but a conclusion of the boy, and was unfounded and unjustified under the proven facts.
We see no sufficient reason to increase or to decrease the amount as found by the jury.
The judgment of the Court of Appeal is set aside, and the verdict of the jury and judgment of the district court thereon are reinstated and affirmed; the defendants to pay cost in all the courts.
BRUNOT, J., dissents.
 On Rehearing.
PER CURIAM. Rehearing denied.
O'NIELL, C.J., dissents. *Page 284