UPTON v. BELL CABS, Inc., et al. (Fidelity & CASUALTY CO. OF NEW YORK, Intervener).

RAU v. SAME.

Nos. 14658, 14659.

Court of Appeal of Louisiana. Orleans.
April 23, 1934.

360

Wm. J. Kearney, Jr., and Alvin R. Christovich, both of New Orleans, for appellants.

Robert S. Link, Jr., of New Orleans, for intervener.

Bond, Curtis, Hall & Foster, of New Orleans, for defendant Bell Cabs, Inc.

HIGGINS, Judge.

Alfred Upton and Jackson Rau instituted separate suits against John A. Salter, Ben J. Lifsey, and the Bell Cabs, Inc., in solido to recover damages for personal injuries alleged to have been sustained as the result of a collision between the taxicab, a Chevrolet sedan, in which the plaintiffs were riding as passengers, and the Auburn sedan automobile owned by defendant Lifsey and driven by defendant Salter, at the intersection of Freret and Marengo streets, this city, on January 29, 1932, at about 12:25 a. m.

The petition of each plaintiff alleged that the accident occurred through the joint and concurrent negligence of both drivers; that Salter was at fault in the following respects:

"1. In failing to stop before entering a right of way street.

"2. In driving his car at a reckless and dangerous rate of speed, in excess of forty-five miles per hour, and entering the said intersection, without looking for approaching traffic, and without slowing up before entering said intersection.

"3. In failing to keep a proper lookout for approaching traffic.

"4. In failing to have his car under proper control.

"5. In driving said car in a reckless and illegal manner, in total disregard for the rights and safety of others.

"6. In failing to take any measures to prevent the collision when same appeared imminent.

"All of which is in violation of traffic ordinance No. 7490 C. C. S. of the City of New Orleans which ordinance is hereby pleaded in its entirety."

The chauffeur of the taxicab is said to have been guilty of negligence on the following grounds:

"1. In not having said cab under control.

"2. In proceeding at a reckless and illegal rate of speed at an intersection where traffic is heavy and therefore dangerous.

"3. In not keeping a lookout for approaching cross traffic.

"4. In failing to avoid an imminent collision between said cab and the approaching Auburn car, through the application of usual measures to prevent like accidents.

"5. In proceeding in a careless and reckless manner without regard to the welfare and safety of his passengers.

"All of which is in violation of traffic ordinance No. 7490 C. C. S. of the City of New Orleans, which ordinance is hereby pleaded in its entirety."

In their answers defendants Lifsey and Salter admitted that the collision took place, but denied liability, averring that the driver of the taxicab was solely at fault in proceeding at an unlawful and excessive rate of speed under the expressed directions of the plaintiff Rau, and, in the alternative, pleaded contributory negligence on the ground that the plaintiffs did not complain about the reckless rate of speed at which the cab was being driven.

Bell Cabs, Inc., answered admitting that the accident occurred and the plaintiffs were injured and that the allegations of the petitions charging negligence against the defendant Salter were true, but denied that the

taxicab driver was in any way at fault, and averred "that said accident was due solely and entirely to the negligence of the said John A. Salter; that the said John A. Salter was guilty of gross negligence in that he failed to stop before entering a right-of-way street, in that he drove his said car at a reckless, illegal and dangerous rate of speed, in excess of forty-five miles per hour, in that he entered said intersection without first looking for the approaching traffic and without slowing up before entering said intersection, in that he failed to keep a proper lookout for approaching traffic, in that he did not have his car under proper control, and in that he drove his said car in a reckless and illegal manner in wanton disregard for the rights and safety of others."

The compensation insurance carrier which paid workmen's compensation to both of the plaintiffs in behalf of their employer filed a petition of intervention making claim for the amount of medical expenses and compensation paid to the plaintiffs respectively, and reiterated the charges of negligence made by plaintiff against both drivers.

When the case was called for trial counsel for Salter and Lifsey withdrew because his clients failed to appear.

There was judgment dismissing the suits against the Bell Cabs, Inc., and granting judgment in favor of the plaintiffs against the other defendants in solido, Alfred Upton being awarded the sum of $3,153.76, and Jackson Rau the sum of $1,059.15, and further judgment in favor of the compensation insurance carrier, for the full amount of compensation and medical expenses paid, amounting to $992.45 and $75 attorney's fees.

The plaintiffs and the intervener have appealed and seek to have the judgment amended by holding the Bell Cabs, Inc., liable in solido with the other defendants and by increasing the amount of each award.

The cases were consolidated for the purpose of trial in the district court and also here.

Freret street, on which the taxicab was proceeding in an uptown direction, is a paved two-way thoroughfare, thirty-three feet in width, with double street car tracks located thereon, and runs from uptown to downtown. Marengo street, on which the Auburn seven-passenger sedan was being driven towards the lake, is a paved two-way street, thirty-six feet in width, and runs from the river to the lake. On the downtown river corner of the intersection is situated a residence, a tree, and a telephone post which obstructed the view out Marengo street towards the river

of one going uptown on Freret street, so that a motorist could not see for any appreciable distance to his left out Marengo street until he reached a position approximately fifteen feet from the lower property line.

Under the traffic ordinance, No. 7490, C. C. S., which was in force and effect at the time of the accident, Freret was a right of way street and all traffic on Marengo street was required to come to a full stop before crossing the intersection. There was also a large metal traffic stop sign mounted on a post on the downtown river sidewalk of Marengo street about ten feet from the corner. There were no slow or caution signs of any character on Freret street. The maximum speed permitted by the ordinance in this vicinity was twenty miles per hour.

The plaintiffs engaged the taxicab at the corner of St. Charles and Louisiana avenue. The cab proceeded out Louisiana avenue in the direction of the lake, turned into Freret street, and was going up town at the time of the collision.

All of the witnesses are in accord that the Auburn car was being driven at an excessive and unlawful rate of speed, estimated between forty and forty-five miles per hour, and without slowing down or giving any signal dashed into the intersection, the front part thereof striking the taxicab on the left side where the rear door is located and the rear fender joins the running board. The cab had negotiated about one-half the intersection at the time it was struck. As a result of the impact, the cab was driven sideways towards the uptown lake sidewalk, where the right rear side struck a telephone post, bringing both vehicles, still engaged, to an abrupt stop at that point, and causing serious and painful injuries to the plaintiffs.

It was shown that Salter admitted that he was a stranger in the city of New Orleans, unfamiliar with the traffic regulations and did not know that he was required to stop before entering Freret street.

Plaintiffs state that, while they did not particularly observe the manner in which the chauffeur was driving because they were engaged in conversation, it appeared to them that, during the time he was driving out Louisiana avenue and up Freret street, he was going at about thirty to thirty-five miles per hour; that he did not slow down or sound his horn before entering the intersection; that they observed the glare of the headlights of the Auburn sedan about one-half block before they reached the corner; and that as they were about to enter the crossing they

noticed the Auburn car, some distance down Marengo street, coming towards them at a fast rate of speed.

The only other eyewitness to the accident was the chauffeur, and he states that there was a governor on his car that prevented its being driven at more than thirty miles an hour (his testimony in this respect being corroborated by other witnesses); that he was driving out Louisiana and up Freret street at about twenty-five to thirty miles an hour, but that, as he reached the street one block below Marengo, he was required to slow down and shift into second gear as another automobile entered the intersection and crossed in front of him; that he accelerated his speed and was going about twenty to twenty-five miles per hour when he reached the corner of Marengo street; that he sounded his horn and as he was about fifteen feet below Marengo street he observed the headlights on the Auburn car between fifty and seventy-five feet or more away to his left; that he noticed that it was going at a fast rate of speed, but concluded that it would either slow down or stop in obedience to the traffic ordinance and traffic stop sign; that he continued on at the same rate of speed, but as the Auburn car got within twelve or fifteen feet of the intersection he concluded that the driver thereof was neither going to slow down nor stop so he accelerated his speed in an effort to clear the crossing, but unfortunately failed to do so. He further testified:

"Q. When you were fifteen feet from Marengo and he (Salter) was fifty or seventy-five feet away, going, as you say, forty or fifty miles an hour, if you had stopped there, what would have happened? A. He might have gone on over, I suppose. If I knew he was not going to stop, I sure would have stopped."

The trial court accepted the chauffeur's version of the accident, stating that he appeared to be "a conscientious and truthful witness." It appears that the conclusion of our learned brother on this score is well founded, because both plaintiffs admit that they were not paying close attention and that their observations were casual as there was no particular reason for taking any interest in what was transpiring up to the time that the accident became imminent, and further the cab driver's testimony is clear and impressive.

However, plaintiffs contend that, as the cab company is a public carrier of passengers, it owed to the plaintiffs the highest degree of care commensurate to human foresight, and that the testimony of the cab driver shows that he failed to exercise that degree of care in the following respects:

(1) That, although the chauffeur saw the Auburn car approaching at a fast rate of speed about fifty or seventy-five feet away, out Marengo street, he did not keep it under proper observation and depended entirely on the driver of the Auburn car complying with the provisions of the traffic ordinance.

(2) That as an experienced operator of a common carrier he was well aware that the intersection was a dangerous one, and yet admits that he was exceeding the speed limit of twenty miles per hour permitted on Freret street and did not diminish the speed of his cab as he approached the intersection.

(3) That he realized that when he was fifteen feet from Marengo street the Salter car was coming at a rapid rate of speed only fifty or seventy-five feet away, and states that he believes that he could have avoided the accident by stopping or slowing down, but he did neither and instead accelerated his speed in an attempt to cross in front of the Salter car.

█ There is no doubt that a public carrier of passengers owes to them not only ordinary care, but the highest degree of care commensurate to human foresight to avoid injuring them. Bacon v. New Orleans Public Service, 18 La. App. 96, 137 So. 213, 866; Hopkins v. N. O. Ry. & Light Co., 150 La. 61, 90 So. 512, 19 A. L. R. 1362; Dawson v. Toye Bros., 15 La. App. 326, 131 So. 716; Thibodeaux v. Star Checker Cab Co. (La. App.) 143 So. 101; Shally v. N. O. Public Service, 1 La. App. 779; Lancon v. M. L. & T. R. R. & S. S. Co., 127 La. 1, 53 So. 365; Le Blanc v. Sweet, 107 La. 355, 31 So. 766, 90 Am. St. Rep. 303; Patton v. Pickles, 50 La. Ann. 857, 24 So. 290; Brisolara v. Caddo Transfer & Warehouse Co., 13 La. App. 27, 127 So. 57; Cusimano v. N. O. Public Service, Inc., 170 La. 96, 127 So. 376; Baptiste v. N. O. Public Service, Inc., 13 La. App. 625, 127 So. 655.

It is also well established that a right of way given under the provisions of the city traffic ordinance is not an exclusive or unconditional one and must be exercised with care, caution, and prudence. Huddy's Encyclopedia of Automobile Law (9th Ed.) vols. 3, 4, page 264; Thomas v. Roberts (La. App.) 144 So. 70; Bacon v. N. O. Public Service, Inc., 18 La. App. 96, 137 So. 213, 866; Murphy v. Star Checker Cab Co. (La. App.) 150 So. 79; Kerns v. Lewis, 246 Mich. 423, 224 N. W. 647; Wm. P. Ross, Inc., v. Corcoran, 10 La. App.

305, 120 So. 883; Johnson v. Item Co., 10 La. App. 671, 121 So. 369; Goff v. Southern Coffee Mills (La. App.) 144 So. 513; Holder-ith v. Zilbermann et al. (La. App.) 151 So. 670.

It has also been held that a driver has a right to presume that the other motorist will obey the traffic laws and is not guilty of negligence in failing to anticipate that he will disobey it. Belden v. Roberts, 3 La. App. 338; Lucas v. Andress, 17 La. App. 331, 136 So. 207; Betz v. Menville, 18 La. App. 359, 137 So. 773; Martin v. Cazedessus, 15 La. App. 100, 130 So. 129; Arena Morris & Co., 14 La. App. 563, 130 So. 565; Buckner v. Powers, 12 La. App. 630, 125 So. 744; Stout v. Lewis, 11 La. App. 503, 123 So. 346; Stern v. Yellow Cab Co., 2 La. App. 273.

There are authorities to the effect that, where one drives a vehicle on the streets of the city in excess of the speed limit provided by the traffic ordinance he is guilty of negligence per se. Wolfe v. Toye Bros. Auto & Taxicab Co., Inc., 18 La. App. 321, 138 So. 453; Mathes v. Schwing, 169 La. 272, 125 So. 121.

The courts have also decided that the violation of the traffic ordinance does not constitute actionable negligence unless the injury sustained was a natural and direct consequence of the violation. Belden v. Roberts, supra; Lucas v. Andress, supra; Ætna Casualty Co. v. Lee, 10 La. App. 763, 123 So. 137; Johnston v. Jahncke Service, Inc., 7 La. App. 348; Hudson v. Jackson Brewing Co., 4 La. App. 549; Lopes v. Sahuque, 114 La. 1004, 38 So. 810; Lee Roby v. Peter Graham, Inc., 3 La. App. 521; Bethancourt v. Bayhi et al. (La. App.) 141 So. 111; Crozat v. Toye Bros. Yellow Cab Co. et al. (La. App.) 145 So. 60.

■ There is also a rule of law that, if one is confronted with a sudden emergency which is not in any way brought about by his negligence, he is not liable even if it is subsequently shown that by acting differently under the circumstances the accident would have been avoided. Mitchell v. Ernesto et al., 153 So. 66, decided by this court March 12, 1934, and authorities cited therein.

■■ A motorist has a right to rely upon the right of way granted to him by the traffic ordinance to the extent of presuming that other drivers will obey the provisions of the ordinance regulating traffic, but the right of way is not an exclusive or unconditional one and must be exercised with care and caution, so that, if as an ordinarily careful and prudent driver one observes or should have observed that another motorist is not going to respect or obey the law or is actually disobeying it, then he is required to use such care, caution, and attention to avoid an accident as an ordinarily careful and prudent driver would have done under similar circumstances by immediately placing his car under proper control, slowing down, or stopping if necessary.

We are convinced that the chauffeur was keeping a proper lookout. He discovered the approaching Auburn car because of the illumination from the headlights when it was a considerable distance from the corner. While he came to the conclusion that it was running at a rapid rate of speed, he was still within his legal rights in concluding that the driver of the Auburn car would obey the traffic ordinance and observe the traffic stop sign or, at least, retard the speed of his car. It is clear that there was sufficient distance in which Salter could have slowed down and perhaps brought his car to a complete stop if he had made any effort to do so. There is no doubt that the intersection was a dangerous one during the busy hours of the day, but this accident happened about 12:30 at night, and at that time there was very little traffic on the streets. There was no caution or slow sign against traffic moving on Freret street, and a driver operating his machine thereon had a right to rely upon the traffic stop sign and the provisions of the traffic ordinance requiring vehicles moving on Marengo street to come to a full stop, so that as the chauffeur approached the intersection there was no reason for him to anticipate that some one would flagrantly violate the provisions of the traffic rules and completely ignore the traffic stop sign.

It is true that the cab driver stated that he was impressed when he first glanced at the Auburn car that it was going at a fast rate of speed, but he also clearly stated that he was unable to determine how fast it was going and subsequently based his estimate of the rate of speed upon a reconstruction of the events leading up to the accident and the accident itself. He says that, if he had had the slightest idea that the driver of the Auburn car was not going to stop or slow down at the time he first saw its lights, he would have stopped, and he expressed the opinion that the accident under those circumstances might have been avoided. However, he also states that he did not realize that the operator of the Auburn car did not intend to slow down until it was a distance of about fifteen

feet from the corner. We are satisfied that at that time it was too late for him to avoid the accident by either slowing down or stopping.

The driver of the cab admits that he was driving between twenty and twenty-five miles an hour and that anything in excess of twenty miles is a violation of the traffic ordinance. We have read several cases where there was an accident between one automobile which was being driven at an unlawful and excessive rate of speed and another car which was being operated slightly in excess of the speed limit, or that was parked in violation of the traffic ordinance, or where the driver was guilty of some technical violation of the ordinance, and in every instance the court concluded that the proximate cause of the accident was the unlawful and excessive rate of speed on the part of one of the drivers. Bethancourt v. Bayhi et al., supra; Lucas v. Andress, supra; McDonald et al. v. Stellwagon et al. (La. App.) 140 So. 133; Hamilton v. Lee (La. App.) 144 So. 249; Ætna Casualty Co. v. Lee, supra; Johnston v. Jahncke Service, Inc., supra; Hudson v. Jackson Brewing Co., 4 La. App. 549; Roby y. Peter Graham, Inc., 3 La. App. 521; Cloverland Dairy Products Co. v. Leach, 16 La. App. 659, 134 So. 433.

It is our opinion that not only an ordinarily careful and prudent driver, but also a very expert and experienced driver, would not have anticipated or foreseen that Salter would be guilty of such wanton recklessness and carelessness as to approach a blind intersection at a rate of speed between forty and forty-five miles an hour when another vehicle had already entered the intersection from a right of way street, without attempting to slow down, in direct violation of the provisions of the traffic ordinance and in utter disregard of the warning of the traffic stop sign.

We conclude that the sole and proximate cause of the accident was the gross negligence, carelessness, and recklessness of defendant Salter, and therefore the judge of the lower court correctly dismissed the defendant cab company from the suit.

■ Jackson Rau's injuries consisted of nervous shock, a broken rib, and a large bruise and laceration on his head. He suffered a fainting spell on January 30, 1932, and was sent to the Baptist Hospital, where he remained for a period of one week, and was discharged and returned to his work on March 2, 1932. He testified that four or five months after the accident he still suffered pain as a result of his injury. His doctors stated that he suffered no permanent injury. We believe that the amount awarded is fair and reasonable.

■ Alfred Upton was more seriously injured. He was rendered unconscious and suffered fractures of the third, fourth, fifth, sixth, and eighth ribs on the right side and the fourth and fifth ribs on the left side, two of which became "knuckled." He developed traumatic pneumonia and traumatic pleurisy and for a period of three weeks the doctors dispaired of his life. He suffered severe and excruciating pain in both sides and in his chest, which required the administration of opiates continuously to relieve the pain. He remained in the hospital from January 29, 1932, until March 16, 1932, and was discharged by his doctor as able to return to work on May 2, 1932. Thereafter he made two additional visits to the doctor's office for further examination. Mr. Upton complains that he is easily fatigued and cannot perform his work with the same efficiency as he formerly did. There is no doubt that he was critically and desperately ill and came very near losing his life, but fortunately for him his doctor states that he has not suffered any permanent disability. At the time of his injury he was 69 years of age and at the time of the trial had returned to his former employment. We see no reason to increase the amount awarded by the trial judge.

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.