The plaintiff, Sylvester H. McAllister, brings this action for damages allegedly sustained by him as the result of an automobile accident which occurred at about the hour of 9:30 in the evening on July 2, 1938, near the town of Livonia, in Pointe Coupee Parish. The plaintiff was riding on the rear seat of a Chevrolet coach automobile owned and being driven by one Allen T. Schully, when it collided with the rear end of a truck traveling in the same direction. As a result of the collision, Schully, the driver, and Carlton Pool, another passenger, also occupying the front seat, were violently and instantly killed. McAllister, the plaintiff, miraculously escaped death, but sustained serious personal injuries. Schully and McAllister were employed by defendant, Jackson Brewing Company, the former as a country salesman and good-will representative, and the latter as an outdoor advertising man, both maintaining headquarters in Monroe, Louisiana.
With the alleged vicarious responsibility of defendant, Jackson Brewing Company, plaintiff has coupled an alternative demand for permanent total disability under the state workmen's compensation statute, Act 20 of 1914, as amended. In the prayer of the petition plaintiff seeks judgment against his employer and its compensation insurance carrier, Employers' Liability Assurance Corporation, Ltd., of London, England, in compensation, for permanent total disability. In the alternative, and in the event that it should be found that plaintiff is not entitled to recovery under the compensation law (or, in other words, that plaintiff was not, at the time of the accident, performing services arising out of and incidental to his employment in the course of his employer's business), plaintiff prays for damages in tort against his employer and its public liability insurance carrier, the Travelers Insurance Company.
Defendants, Jackson Brewing Company and the Employers' Liability Assurance Corporation, Ltd., answered jointly. They admitted the accident but denied liability on the ground that the plaintiff, at the time of the accident, was not acting within the scope of his employment, and, consequently, did not come within the coverage afforded by the workmen's compensation act.
For answer, defendants, Jackson Brewing Company and the Travelers Insurance Company, jointly admitted the accident but denied liability for damages in tort, averring that plaintiff, at the time of the accident, was acting within the scope of his hazardous employment and that, therefore, the workmen's compensation act is applicable and is plaintiff's exclusive remedy. They further aver that, if the compensation act be held inapplicable, there is no liability in tort for the reason that the nature of Schully's services to the Brewing Company was not such as to render applicable the rule of respondeat superior; and, secondly, that the coverage of the public liability policy did not include, and could not be extended to include, Schully as an additionally "named insured", it being averred that the policy covered the Jackson Brewing Company, the "named insured" only. In the alternative, these named defendants pleaded the contributory negligence of plaintiff.
After a trial on the merits, judgment was rendered in favor of plaintiff and against the defendants, Jackson Brewing Company and the Travelers Insurance Company, its public liability insurance carrier, for $11,301.57, and dismissing plaintiff's suit directed against the Brewing Company and its workmen's compensation insurance carrier, Employers' Liability Assurance Corporation, Ltd.
From this judgment the defendants cast below prosecute this appeal. Plaintiff has answered the appeal, praying for an *Page 181 
increase in the amount awarded. Plaintiff has also appealed from that portion of the judgment dismissing his suit, and urges that, should we hold the judgment below to be erroneous, thereby relieving these named defendants so cast from all liability, judgment should be rendered in his favor against the defendants, Jackson Brewing Company and the Employers' Liability Assurance Corporation, Ltd., in accordance with the provisions of the workmen's compensation laws, as originally alternatively prayed for.
An analysis of the record in the instant case makes it perfectly clear that the question of fault and that of contributory negligence is no longer an issue in the case. All parties apparently concede, as indeed they must, that the accident and its tragic consequences, resulted solely from the gross negligence of Schully, the driver of the automobile in which plaintiff was riding, and that plaintiff did not, either directly or indirectly, contribute to its occurrence.
The issue, as presented to us in brief and in oral argument, is two-fold:
First, were plaintiff's injuries sustained by him while acting within the scope of his hazardous employment, thereby restricting him to the exclusive remedy afforded under the workmen's compensation act; and,
Second, if the compensation act be held inapplicable, can plaintiff recover damages in tort: (a) Under the doctrine of respondeat superior, and (b) under the extended coverage clause of the public liability insurance policy here involved.
In view of the dual answers filed by the Jackson Brewing Company, whereby it alternatively denies liability to the plaintiff (which, in effect, is an admission, eventually, of its responsibility on one or the other of plaintiff's alternative demands), for the purpose of brevity, in the use of the word "defendant" we refer to the Travelers Insurance Company.
The Jackson Brewing Company, which is domiciled in New Orleans, employs a large number of city and country salesmen. It is shown that Edwin T. Hiller was the country sales manager, having supervision and control over all country salesmen, advertising and maintenance men. It also appears that Allen T. Schully, the driver of the automobile, was employed by the Jackson Brewing Company as an out-of-town salesman and good-will man and that plaintiff was employed as an out-of-town sign maintenance man, both having headquarters in the City of Monroe, Louisiana. Though plaintiff's duties required that he be absent from his home in New Orleans a great portion of the time, it is shown that he frequently visited his family, this to the knowledge of, and with the acquiescence of his superiors. It appears that the said Hiller had planned a sales and advertising meeting to be held at his home on July 4, 1938, where all salesmen were expected to gather for a general discussion and barbecue.
Plaintiff's petition alleges that he was ordered, or, in the alternative, invited, to attend the sales meeting and barbecue at his immediate superior's home. All the parties concede that if plaintiff was injured while he was acting within the scope of his hazardous employment, the nature of his employment and his duties were unquestionably such as to bring him under the exclusive protection of the workmen's compensation law. Consequently, the answer to the question of whether plaintiff was ordered, or was merely invited, to attend the sales meeting, is decisive of the issue as to whether he is entitled to the exclusive remedy afforded by the compensation act, or to recovery in tort under the provisions of Article 2315 of the Revised Civil Code.
In support of the contention that plaintiff's recovery is restricted exclusively to the workmen's compensation law, defendant relies upon a written statement allegedly dictated and signed by plaintiff in the presence of his wife and a representative of the Employers' Liability Assurance Corporation and the testimony of the sales manager, Hiller. It is shown that the accident occurred at 9:30 o'clock on the evening of July 2, 1938. Plaintiff's injuries were of such a serious nature as to require his immediate removal to the nearest hospital, which, in this instance, was the Lady of the Lake Sanitarium in Baton Rouge. Plaintiff testified that he had no recollection of the accident, he being asleep on the rear seat of the automobile at the time, and only regaining his consciousness the day following. The record discloses that a portion of the statement in question was obtained from plaintiff two days after the accident and the remainder on the following morning. This statement bears the notation of having been read in its entirety by plaintiff's wife to him and as being "true and correct", both signing the same. The sum and substance of the statement in question is to the effect that Hiller, the sales manager, had told plaintiff in Gulfport, Mississippi, *Page 182 
of a proposed sales meeting, and requested that he be present; that plaintiff left Monroe with Schully, in the latter's automobile, for the purpose of attending the meeting, and that, at the time of the accident, the plaintiff, was acting under the instructions received from Hiller, his superior; that plaintiff had received no instructions as to the means of transportation he should use in reaching New Orleans, and that his attendance at this sales meeting was the direct motive prompting the fateful trip.
The testimony of Hiller is to the effect that, in the early spring of 1938, he happened to meet plaintiff in a restaurant in Gulfport; that he informed plaintiff of a sales and advertising meeting which was to be held at his home, though no date had been fixed, at which meeting, he said, he "would like to have plaintiff present"; that a month prior to the accident he informed Schully of the scheduled meeting and requested that Schully take the plaintiff along. Hiller further testified that it was as a result of this order or request that plaintiff accompanied Schully.
Opposed to this evidence, we have the testimony of plaintiff that on no occasion did Hiller order or request him to attend the sales meeting in question; that on Friday, July 1, Schully casually informed him of this proposed meeting; that Schully was driving down for that purpose and that, as Monday, July 4, was a legal holiday, Schully asked plaintiff whether he would care to accompany him, thus affording plaintiff the opportunity of spending an extended week-end with his family, and, should plaintiff desire, of dropping in at the meeting and barbecue. Plaintiff testified that he readily accepted the invitation and that, upon terminating their following day's work, they met at a named hotel and began the trip, accompanied by Pool, an employer of Remington-Rand Company, who also was desirous of going to New Orleans. He further testified that Schully did not at any time notify or apprise him of Hiller's suggested order or request concerning his attendance at the proposed meeting; that, on the second day following the accident, Hiller accompanied plaintiff's wife to the Lady of the Lake Sanitarium and there instructed plaintiff not to make a statement to anyone, but that, if anything had to be said regarding his reason for making the trip, plaintiff should state that "he was ordered in". Plaintiff also testified that he had only a faint and hazy recollection of everything that transpired at the time he signed the statement, as he was under the effect of opiates and in a semi-conscious condition; that a week or ten days thereafter a statement of similar import was presented to him for his signature, but that he refused to sign it for the reason that it did not reflect the true facts. In his testimony plaintiff repudiated the written statement and stated most positively that he was, at the time of the accident, returning to New Orleans for the sole purpose of visiting his family and spending the week-end and holiday with them, and that under no circumstances was he traveling under company orders or instructions, or engaged in company business.
The testimony of plaintiff regarding his mental and physical condition at the time the statement in question was made is amply corroborated by the testimony of plaintiff's wife and of the attending nurses and physicians, and, also, by Hiller. The latter testified that, at the time the facts contained in the written statement were elicited, plaintiff was in a daze, apparently suffering a great deal, and unquestionably "not knowing what he was doing".
Aside from the fact that plaintiff's mental and physical condition was not such as to warrant our acceptance of the written statement as reflecting the true circumstances motivating plaintiff's trip, we find other attending facts which clearly reflect to our satisfaction the reasons from which this statement takes root. The record shows that plaintiff and Hiller had been on intimate social and business terms for many years. On learning of the accident, plaintiff's wife called at the Brewing Company's offices, and she testified that upon meeting Hiller, the latter called her aside and informed her that he had made, or proposed to make, a statement to the insurance company (Employers' Liability Assurance Corporation) to the effect that "he had ordered plaintiff in", thereby extending full protection to plaintiff and his family, he well knowing the impending need of plaintiff's wife and two children in the event of plaintiff's death. As testified to by her, Hiller then stated that he did not want them to be "left without anything". It is shown that, following this meeting, Hiller accompanied plaintiff's wife to Baton Rouge, and, as testified to by plaintiff and his wife, Hiller again cautioned them, under *Page 183 
all events, to state that he, Hiller, had ordered plaintiff in.
Though Hiller testified to having ordered or requested plaintiff to attend the sales and advertising meeting, what do we find him reporting to his superiors shortly following the accident?
Mr. Pasquier, secretary of the Brewing Company, testified that Hiller telephoned informing him of the accident and stating that, on the trip in question he had ordered Schully and plaintiff in. Pasquier further testified that fifteen minutes after Hiller again telephoned him, and, on this second call, made the following rather startling statement: "Joe, I don't want you to misunderstand me. I didn't order McAllister in."
We attach no probative force or effect to the written statement of plaintiff relied upon by defendant when we consider the underlying reasons which induced it and the circumstances surrounding its confection. We are convinced that, at the time that plaintiff made the statement in question, he was in great distress and excruciating pain and mentally unfit to fully appreciate a true picture of what had previously transpired. In this distressing condition, it is not unreasonable to conclude that he would, naturally — especially in view of their close relations — yield to the promptings of Hiller, his immediate superior, who, to all intents and purposes, was not only solicitous of plaintiff's welfare, but was then anxiously endeavoring to protect plaintiff's interest even to the extent of resorting to questionable statements of fact. We find further support for our conclusion in the fact that plaintiff's recovery was uncertain, of which he himself was aware, and it is but natural that he should resort to all available means to afford his family such protection as his helplessness permitted. See Mathes v. Schwing, 169 La. 272, 125 So. 121.
We are drawn to the conclusion that plaintiff, at the time of the accident, was acting on a mission independent of his employment, neither incidental to nor connected with his employer's business, and beyond the scope of his hazardous employment. We conclude that the workmen's compensation act is inapplicable and that plaintiff cannot recover thereunder.
We next consider whether Schully, the driver of the car at the time of the accident, was an employee of the Jackson Brewing Company so as to make effective the rule of respondeat superior.
The defendants concede that Schully was an employee of the Jackson Brewing Company and not an independent contractor. They contend, however, that he was not such an employee as would call for the application of the rule of respondeat superior. They rest this contention on the doctrine announced in the case of Marquez v. LeBlanc et al., La.App., 143 So. 108. The solution of this problem depends upon whether, under the facts showing the nature of Schully's employment, the Jackson Brewing Company was vested with the right of supervising and controlling the work performed by him in his line of duty. Taylor et al. v. Victoria Navigation Company et al., La.App., 176 So. 519.
We shall, therefore, consider the evidence presented with respect to the relationship existing between the parties. A summary of this evidence reveals the following facts:
Schully had been in the employ of the Jackson Brewing Company for about two years as a country salesman and good-will man, with headquarters in Monroe. It is not shown what his sales territory limits were, but we assume that they covered, at least, North Louisiana. There was no written contract of employment and he was not employed for any specific length of time. The Brewing Company could, at its pleasure, dispense with his services. The necessary materials for expanding the Brewing Company's trade were furnished by it. In addition to a fixed salary, paid monthly, Schully was also reimbursed all of his living expenses, as well as the expenses incurred by him in the maintenance and operation of the automobile owned by him, and used in the performance of his duties. He was reimbursed these expenditures upon the submission of monthly statements.
There is no dispute over the fact that Schully was specifically ordered by his immediate superior to come to New Orleans from Monroe to attend the sales and advertising meeting. While acting under these orders and while on this journey, the accident in question occurred.
It is specifically shown that Schully was under the direct supervision of Hiller, the sales manager, as well as the New Orleans office, and that he looked to, and received instructions from, these two sources as to "where to go and what to do"; his sales *Page 184 
operations were conducted under a regular itinerary, containing a specified number of towns to be visited, and which was mailed to the New Orleans office and his sales manager the week previous for approval. This itinerary could be changed, modified, or cancelled, at the pleasure of the sales manager, or the main office. Furthermore, Schully had no discretion as to the means of transportation to be used by him in the performance of his duties. He was required to use his own automobile, the expenses of its maintenance and operation being paid by his employer. Because of this requirement, the Brewing Company obtained from the Travelers Insurance Company an insurance policy, by which the operation of Schully's car was protected against liability for any property damage or personal injuries up to a maximum amount.
It is also shown that failure to observe any order of a superior as to any duty in connection with his employment would have subjected Schully to immediate dismissal. Further, the record discloses that, as in the case of all other employees, a deduction in Schully's salary for the year 1938 was made in conformity with the Federal Social Security Laws, 42 U.S.C.A. § 301 et seq.
The Marquez case, supra, relied upon by defendant, involved a suit instituted against LeBlanc and the State Agricultural Credit Corporation by one injured in an automobile collision caused by the negligence of LeBlanc. The corporation contended that LeBlanc was an independent contractor for whose negligent acts it was not responsible. It appeared that LeBlanc drew a salary of $250 a month from the credit corporation and was also paid $25 "as an expense allowance incidental to the operation of his automobile" (owned by him). It further appeared that "it was left to his own volition to choose the means of transportation to perform the services that were required of him". His duties consisted of inspecting crops in a designated territory. It appeared that "he had no definite hours and was not under the supervision of anyone as to how and when he was to perform his duties, except that he was required to make a written report every two weeks".
We held in that case that the State Agricultural Credit Corporation was not responsible for LeBlanc's negligent act since he was not the agent of the corporation, but an independent contractor. We quoted the following with approval from the opinion in McCarthy v. Souther, 83 N.H. 29, 137 A. 445, 446, 449:
"Where no control may be implied from the situation and none has been expressly reserved, the mere fact that the relationship is of agency or service should not be enough to subject the employer to liability. And if, under the contract of employment, the employer has control over part only of the service to be rendered, liability for the manner in which the rest of the service is performed does not thereby follow.
"For service not subject to the employer's control and direction in its details, on principle, he is no more to be held for its faulty performance than for the liability of an independent contractor. If the employer may not direct how a thing shall be done, then what the agent or servant does is not the employer's act. That he has the right under the contract of employment to have the thing done is not enough to impose liability. That right obtains as well in cases of independent contracts. The further right to direct the manner of performance must appear."
The facts in the case at bar, however, can be readily distinguished from those discussed in the Marquez case. In the Marquez case, it was left to LeBlanc's own volition to choose whatever means of transportation he desired to perform the services required of him. In the case at bar, Schully was not only required to use his own automobile in the performance of his duties, but its maintenance and operating expense was entirely paid for by defendant alone, and, in addition to this, the Brewing Company carried insurance protection as a result of this required use. LeBlanc's duties in the inspection of crops, in the Marquez case, were exercised as he pleased. He had no definite hours assigned for their performance and no one supervised the methods he was at liberty to use, his employer being concerned with the ultimate annual result rather than how and when it was obtained. In the instant case, Schully's daily hours of work and the number of towns to be visited by him were specifically fixed in an itinerary previously approved by his superiors, and at all times he was acting under orders, receiving instructions by mail, telegram and telephone. His visits to the trade were subject to change at the pleasure of his superiors and his employment was for an indefinite term, being subject to termination at the whim of his employer. *Page 185 
With such an obviously unlike relationship, it is manifest that the Marquez case, supra, is not applicable to the facts in the case now under consideration.
The cases of Gallaher v. Ricketts, La.App., 191 So. 713, and Hardware Mutual Casualty Company v. Standard Coffee Company, La.App., 2 So.2d 89 (in which the Marquez case is cited with approval), are likewise inapplicable to the facts presented in the instant case.
In the Gallaher case we held that the employer was not liable for injuries to a third person caused by a newspaper carrier's negligent operation of his automobile while on his way to attend a "pep" meeting being held at his employer's place of business, although an allowance was made by the employer for expenses in operating the car in the delivery of papers. There [191 So. 716] we said:
"We think that it may be said that there were two parts to the work which Ricketts was employed to perform. The first and most important was the delivery of papers. In this part of his work defendant was interested in having him use his automobile. It paid a part of the expense of operation and made itself liable for any negligence of which he might be guilty while so delivering papers. The other part of his job was to attend meetings along with all other carriers. Defendant had no concern with his use of his automobile in attending those meetings. It is not liable for his acts of negligence committed while going to and from those meetings. So far as defendant was concerned, the automobile was identified solely with the delivery of its newspapers."
In the instant case, Schully was ordered by his employer to attend a sales meeting; the Brewing Company knew that Schully was required to use his car on all company business and that, under these regulations, he would use it on this particular trip. It was, therefore, interested in and directly affected by the use which its employee was making of his car at the moment of the accident. Such a situation did not obtain in the Ricketts case, supra.
In Hardware Mutual Casualty Company v. Standard Coffee Company, supra, the suit was predicated upon the alleged vicarious responsibility of the defendant coffee company for the negligent acts of one of its employees under the doctrine of respondeat superior. The company [2 So.2d 90] had in its employ one Payne, who was "a household merchandise specialist". It was Payne's duty to call on route salesmen stationed in various cities in Louisiana, he having headquarters in Monroe. He would meet these salesmen at 7 a.m. and ride over their route with them in a truck furnished by the company, calling on prospects. His salary was $30 weekly, plus "railroad or bus transportation, whichever was the cheapest". It appeared that Payne owned an automobile and the company knew that he frequently used it on company business. At the time of the accident he was using it while en route from Opelousas to Franklin to meet the salesmen there stationed. We held that the company was not responsible for Payne's negligence at the time of the accident since the doctrine of respondeat superior was inapplicable, the company not having "any control over the means by which Payne got from place to place, and there being no necessary implication from the facts developed, which would suggest the use of the automobile was indispensable in the conduct of defendant's business, * * *". After citing with approval the LeBlanc and Ricketts cases, we said:
"There is no evidence in this case that Payne was required to use an automobile in order to facilitate the business of his employer, nor is there any testimony to the effect that the business could not have been transacted as efficiently without the use of an automobile. It must be conceded that with an automobile more territory can be covered and less time lost, since there would be no necessity to wait for train or bus schedules and one may go from place to place as soon as the business at hand has been concluded, but we do not know from anything that is in the record in this case that it was necessary for Payne to use an automobile. * * * According to the testimony of Mr. Beck, to whom he reported his activities, there was a time when he did not own an automobile and must, therefore, have transacted his business without it."
Again, we find the facts in the cited case clearly distinguishable from the facts here presented. In the cited case the employee was not "required to use an automobile in order to facilitate the business of his employer". Here, as already stated, the employee, Schully, was required to use his car in the performance of his duties, as a result of which the accident occurred. *Page 186 
The case of Jones v. Shehee Ford Wagon Harness Company, Inc., et al., La.App., 157 So. 309, 313, presents a factual situation not as strong as is here presented. In holding the defendant company liable for the negligent acts of its salesman, who was held to be an employee, the Court of Appeal for the Second Circuit said:
"Liability in cases of this kind depends, not upon the fact of ownership of the car and the general employment of the person who drives it and causes the injury, but upon whether the driver was, at the time of the injury, in the exercise of the functions for which he was employed, for it is only while in the exercise of those functions that the relationship of master and servant or principal and agent exists.
"An employee is the agent or servant of his employer only while engaged in doing for his employer something which he has been directed to do or some act which can be reasonably and fairly said to be a natural incident of the employment, or logically and naturally connected therewith."
After reviewing other authorities, the court concluded that the criterion to be employed for the application of the master and servant doctrine is whether, under the contract of employment, "the employer has the right to direct how a thing shall be done. It is the right under the contract and not the exercise or want of exercise of that right which governs." Shea v. Reems, 36 La.Ann. 966; Abate v. Hirdes, 9 La.App. 688, 121 So. 775.
The Jones case, supra, was reviewed by the Supreme Court and the judgment of the Second Circuit Court of Appeal, wherein the relation of master and servant was held to have been fully established, was affirmed. 183 La. 293, 163 So. 129.
In our view, the evidence submitted compels the rejection of defendant's contention. The mere fact that Schully had some discretion as to minor details in making his daily trade calls and in meeting potential customers did not affect the status of his employment, nor the right which the Brewing Company had to direct how and when he should perform his duties, nor the right to terminate his employment at its will.
It must be borne in mind that in cases of this nature, each must stand or fall upon its own particular facts, and that each circumstance considered by the court in formulating its opinion may not, of itself, if treated separately, be sufficient to indicate the true legal relationship of the parties. We can only arrive at a correct result by weighing all of the facts and surrounding circumstances as a whole and by determining upon whether they are such as to justify the specific ruling. We may well quote the language in the case of Johnson v. Mayer, 30 La.Ann. 1203, 1206:
"These are small and apparently trifling circumstances, when weighed against the high-sounding periods of an authentic act. But straws are better indicators of the course of the wind than are the marble columns of some imposing temple. * * * `Trifles light as air' may become `confirmations strong as proofs of Holy Writ.'"
By weighing all of the facts and circumstances in connection with Schully's employment and the performance of his duties and services, we have concluded that he was an employee and servant of the Jackson Brewing Company, and, on the occasion of the accident in which plaintiff was injured, he, Schully, was acting as a servant in the course of his employment, and, for the injuries thus occasioned plaintiff, defendant and the Jackson Brewing Company are clearly liable under the rule of respondeat superior.
The remaining contention presented by defendants in seeking to avoid liability is that Schully was not individually covered by the insurance policy issued by the Travelers Insurance Company.
The policy in question was of a "non-ownership" type. It evidences an agreement between defendant public liability insurance company and the Jackson Brewing Company providing coverage for each person and for each accident to a maximum amount. There appears within the policy the following:
"The unqualified word `insured' wherever used in Coverages A and B and in other parts of this policy, when applicable to these coverages, includes not only the named insured but also any person while using the automobile and any person or organization legally responsible for the use thereof, provided that the declared and actual use of the automobile is `pleasure and business' or `commercial', each as defined herein, and provided further that the actual use is with the permission of the named insured."
There also appears, under the title "Coverage A — Bodily Injury Liability", the following provision: *Page 187 
"To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages, including damages for care and loss of services, because of bodily injury, including death at any time resulting therefrom, sustained by any person or persons, caused by accident and arising out of the ownership, maintenance or use of the automobile."
Attached to the policy and forming part thereof is a schedule entitled "Employer's Non-Ownership Liability", and, under the title "Class 1" there appears a schedule or list of the employees of the Brewing Company. In that list appears the name of Allen T. Schully, and, opposite his name, recognition by the insurance company of a premium paid by the Brewing Company covering bodily injury and property damage liability. Under the same schedule there appears "Class 2", which is shown to cover "persons", and it shows a total number of 250 employees for insurance coverage for bodily injury and property damage liability. Attached to the policy and forming part thereof is an amending memorandum. This memorandum provides:
"It is agreed that such insurance as is afforded the named insured by the policy for Bodily Injury Liability and for Property Damage Liability applies with respect to automobiles not owned by the named insured, subject to the following provisions:
"1. Application of Insurance. The insurance applies only to the use, by any person, of any automobile or motorcycle of the private passenger type, in the business of the named insured as expressed in the declarations, and to the use in such business, by any employee of the named insured, of any automobile of the commercial type if such use is occasional and infrequent."
This memorandum, under paragraph "No. 4," also provides as follows:
"Class 1. Class 1 consists of the following persons, provided their usual duties in the business of the named insured include the use of automobiles of the types described in paragraph 1 hereof:
"(a) All employees, including officers, of the named insured compensated for the use of such automobiles by salary, commission, terms of employment, or specific operating allowance of any sort;
"(b) All direct agents or representatives of the named insured.
"Class 2. Class 2 consists of all employees, including officers, of the named insured not included in Class 1."
Having concluded that plaintiff's injuries were sustained as a result of an accident caused by the negligence of Schully, the driver of the automobile; that said Schully, at the time of the accident, was operating his automobile under the specific requirements of his employer, Jackson Brewing Company; and that, at the time of the accident, the said Schully was an employee of said company, acting within the scope of his employment, in compliance with the direct and specific orders of his employer, thus making applicable the rule of respondeat superior, it is manifest that the insurance coverage herein involved applies. The policy provided public liability protection in favor of the Jackson Brewing Company whenever accidents arose in the use of automobiles personally owned by the employees (whose names appeared on the policy), and under the circumstances as are here presented.
We next consider the extent of the injuries sustained by plaintiff.
Under a stipulation agreed upon between the parties, it is conceded that plaintiff suffered serious injuries and that the hospital and medical reports correctly reflect their number and extent. The report of the Lady of the Lake Sanitarium, to which plaintiff was taken immediately after the accident, reveals that he was suffering from several deep lacerations of the forehead and skull, the skull lacerations revealing a linear fracture. There were other lacerations, bruises and contusions about the face and on both arms; a compound fracture of the right femur, with considerable bleeding, a fracture of the right patella, or knee-cap, a fractured dislocation of the right ankle and a double comminuted fracture of the left tibia, together with a great degree of shock. Plaintiff remained in this sanitarium for a period of thirty days. During that time no effort was made to mend the broken bones except through the use of traction, opiates being administered to relieve pain. On August 2, 1938, plaintiff was transferred to the Baptist Hospital of New Orleans. His legs were then placed in traction, braced, and casts were applied. Three weeks thereafter, it appearing that the fracture of the right leg had not united, the leg was opened, a reduction of the fracture was made, and a Lane plate applied. It is shown that because of plaintiff's lack of finances, and being a World War veteran, which entitled him to *Page 188 
hospitalization in the United States Veterans' Hospital, he was discharged from the Baptist Hospital in September, 1938, and from there transferred to the United States Marine Hospital of New Orleans for continuation of treatment.
While under treatment at the Marine Hospital, it was discovered that the Lane plate had broken and caused an inward displacement of the fracture. Plaintiff's leg was again opened, the fracture reduced, and the bones joined through the use of a Steinman pin. On May 23, 1939, plaintiff was discharged by the Marine Hospital as "improved" and transferred to the Veterans' Facility in Biloxi, Mississippi. On that date his right leg had become three-eighths of an inch shorter than the left, and he could only extend it to 170 degrees and flex it to 40 degrees, with a limited range of motion of 30 degrees, thus compelling him to wear a walking caliper.
The records of the Veterans' Facility reflect that the plaintiff was kept in a plaster cast until July 17, 1939. From that time he has been receiving physiotherapy treatment, with the result that there has been a slight increase in the flexion and extension of his leg. It is shown that the union of the fractures is firm, but he is not able to walk around without the use of a walking stick, which, the authorities of the hospital conclude, he shall have to use permanently. They further stated that no other relief can be obtained by plaintiff and that there shall not be any further improvement. Under such circumstances they conclude that plaintiff is permanently and totally incapacitated to do any work which he was accustomed to perform.
It is likewise shown that, on the date of the trial, March 13, 1941, plaintiff was still a patient under treatment at the Veterans' Facility, and that he has been awarded and is receiving from the United States Veterans Administration compensation of $6 per month as a result of his total and permanent disability.
In his petition plaintiff claims the sum of $1,301.57 for doctors', nurses' and hospital bills, together with medicines and expenses incurred in connection with his hospitalization. There is no dispute as to the correctness of this item, defendants conceding in the stipulation of fact agreed upon that such expenses were actually incurred, part of which plaintiff testified he has paid.
It is further shown that plaintiff was earning a salary of $135 per month. At the time of the accident he was 42 years of age. He has a wife and two young daughters, all of whom are dependent upon him for support and maintenance. It is shown that his entire salary was utilized for the maintenance of his family. Since the date of the accident he has been a patient at various hospitals, unable to engage in any employment. It is shown, however, that plaintiff received his monthly salary of $135 from the Jackson Brewing Company for a period of twenty months. This, undoubtedly, was taken into consideration by the lower court in making the award for damages claimed under the item of loss of earning capacity.
The lower court awarded the sum of $11,301.57 for all damages sustained by plaintiff, and we do not believe that the amount awarded is excessive. Plaintiff's injuries have brought him to a position whereby he is unable to engage in any gainful employment, such as he formerly pursued, for the maintenance and support of himself and his family. He has undoubtedly suffered a great amount of physical pain, with extreme suffering at intermittent periods, to say nothing of continuous discomfort and mental anxiety and worry. Furthermore, we doubt seriously whether the end of his suffering is in sight. He has given four years of his life confined as a patient in hospitals, deprived of the comfort and consolation of his family save periodical visits. Considering all the circumstances presented, we are satisfied that the amount awarded is reasonable and commensurate.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.
WESTERFIELD, J., recused. *Page 189